**CORRETJER v. DRAUGHON et al.**

**No. 3193.**

Circuit Court of Appeals, First Circuit.

Feb. 12, 1937.

Benjamin F. Karpay, of New York City (Gilberto Concepcion de Gracia, J. M. Toro Nazario, and Carlos D. Vazquez, all of San Juan, P. R., and Vito Marcantonio, of New York City, on the brief), for appellant.

Amos W. W. Woodcock, Sp. Asst. to Atty. Gen., for appellees.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This is an appeal from an order of the United States District Court of Puerto Rico dismissing the petition of the appellant for a writ of habeas corpus.

The application for the writ grew out of proceedings before a federal grand jury investigating the activities of certain officials and members of the Nationalist Party, one of the recognized political parties in Puerto Rico, who were indicted for joining in a conspiracy to overthrow the government of the United States in Puerto Rico, and to incite an insurrection against the authority of the United States over the Island.

The petitioner was the general secretary of the Nationalist Party and of its national council.

Just prior to the convening of the grand jury on March 31, 1936, upon application of the District Attorney, the Judge of the United States District Court issued a subpoena duces tecum, directed to the Nationalist Party and certain of its officers, including the petitioner, to produce before the grand jury all minutes of the proceedings of the Nationalist Party for and during the years 1933, 1934, 1935, and 1936, and certain other papers, including the original of a decree issued about January 1, 1936, by one Pedro Albizu Campos and the petitioner, as president and general secretary of the Nationalist Party, calling on all Nationalists to recruit, register, and enlist in an organization for military service.

The petitioner appeared before the grand jury, but failed to produce the minutes and papers described in the subpoena duces tecum, and filed a return thereto in which he claimed the descriptions of the papers requested were too broad and ambiguous, and that all the papers referred to prior to February 23, 1936, had been seized by the police and destroyed.

Whereupon on April 1, 1936, upon petition of the District Attorney, the District Court issued an order for the petitioner to show cause why he should not be adjudged in contempt.

The petitioner appeared in court and filed a motion to vacate the show cause order. Upon a hearing on April 2, 1936, counsel for the petitioner, one Pedro Albizu Campos, admitted that, while the early minutes of the Nationalist Party had been destroyed, the petitioner did have in his possession the minutes of the proceedings of the Nationalist Party since February 23, 1936. The following colloquy then took place between counsel and the court:

"Mr. Albizu: He isn't going to present them (referring to the minutes admitted to be in the petitioner's possession) because they are incriminating.

"The Court: The court will decide whether they will incriminate him and whether or not he has any privilege in reference to them.

"Mr. Albizu: The documents do exist since February 23, 1936.

"The Court: Then he is directed to turn them over to the grand jury, and at the proper time if he wants to take the position before this court that they will incriminate him he may do so. He is entitled to protection against incrimination as a witness, but if he has in his possession some documents of an organization of which he is a member or an officer, and if he is called upon to do so he must produce them. That's the law, decided in many cases, and that is true even in case where there is an indictment. I don't care to hear any argument. He is directed to deliver them forthwith to the grand jury.

"Mr. Sanchez: He is asking your Honor until tomorrow morning at nine-thirty to bring them.

"The Court: Why didn't he bring them with him?

"Mr. Sanchez: The subpoena is so vague and general, he doesn't know what documents are called for.

"Mr. Albizu: I think, your Honor, this is a case of inquisitorial proceeding. My client will not present the documents because they will incriminate him. There is a process in court accusing Mr. Corretjer of conspiracy. This is a fishing expedition.

"The Court: I don't care to hear any more. Will the grand jury conclude to-day?

"Mr. Snyder: If these books are made available.

"The Court: I want to give him every opportunity. I will tell him now to have those documents in the grand jury room tomorrow morning at nine o'clock.

"Mr. Albizu: Your Honor please, my client will not produce them because they incriminate him.

"The Court: All right; have him * * * stand up.

"The Court (replying to suggestions by counsel): I don't have to issue any rule to show cause when the contempt is committed in the presence of the court, and in the court I have just ordered the respondent to produce those papers tomorrow morning at nine o'clock, and his counsel responded that he will not do it. Now that being the case there is nothing left for me to do except to pronounce judgment. * * *

"The Court: I am not going to dismiss the proceedings. Let the respondent stand up. You have heard the statement that you will refuse to bring these papers?

"Mr. Albizu (to respondent): Do not answer. (To Court): He will not testify because he has not been warned about the fact that he will be incriminating himself. He has a right not to testify.

"The Court: All right; the sentence of the court is that you be confined in the San Juan district jail for a period of one year.

"Mr. Snyder: I take it that the defendant is now committed?

"The Court: Yes. He is committed to the custody of the marshal."

An order of commitment in accordance with the sentence of the court was then issued by the clerk under seal of the court.

While it is very doubtful whether the situation is the same as in case of an officer of a corporation who is directed to produce the corporation books and papers, as in Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771, Ann.Cas. 1912D, 558, since a political party in Puerto Rico is not a corporate body, it has been defined as an association of voters believing in certain principles of government and formed to urge the adoption of those principles. 49 Cyc., pp. 1074, 1075. It is also questioned whether the subpœna duces tecum was directed to the petitioner as an official of the Nationalist Party, or as an individual; yet he should have produced the papers in his possession as directed and on refusing to deliver them to the grand jury should have appealed to the court and invoked his privilege under the Fifth Amendment, and submitted the documents to the court for its determination as to whether they were incriminating.

He and his counsel saw fit to decide for themselves whether the minutes in his possession tended to incriminate him and in open court defied the order of court to produce them. Brown v. United States, 276 U.S. 134, 144, 48 S.Ct. 288, 290, 72 L. Ed. 500; Consolidated Rendering Co. v. Vermont, 207 U.S. 541, 552, 28 S.Ct. 178, 181, 52 L.Ed. 327, 12 Ann.Cas. 658.

In the last-cited case the court said:

"The court simply held that it could not determine whether the objection as to incrimination was valid until the books were produced for inspection by the court, though before they were to be used in evidence. If, after that inspection, any portion were found of that character, the court held that such portion would be excluded. As, however, the company failed and refused absolutely to produce any of the books, with some unimportant exceptions, it was adjudged to have failed to show any reasonable cause for such refusal to comply with the requirements of the notice, and it was fined for the contempt. Obviously the company could not, by its refusal to produce the books, thereby entirely conclude the court from any examination whatever into the sufficiency of the excuses for such nonproduction. Otherwise the company could disobey at its pleasure and so prevent any inquiry

into the merits of the excuses. The statute might as well not exist if this were to be permitted."

The subpœna duces tecum was not broader in the instant case than in the case last cited, and it was held in that case that "even if the notice had been too broad, the objection cannot be urged as to the validity of the order adjudging the company guilty of contempt."

There was even less objection in the case at bar, since the refusal to produce was confined to the minutes of the National Party since February 23, 1936. Though admitted to be in the possession of the petitioner, he refused to produce them or submit them to the court for its determination as to whether they were incriminating.

The order of the District Court dismissing the petition is affirmed.