## NATIONAL LABOR RELATIONS BOARD v. BARRETT CO. et al.

### No. 7531.

Circuit Court of Appeals, Seventh Circuit.
May 8, 1941.

584

MAJOR, Circuit Judge, dissenting.

Clarence W. Heyl, of Peoria, Ill., for appellants.

Robert B. Watts, Gen. Counsel, NLRB, of Washington, D. C., and I. S. Dorfman, Regional Director, NLRB, of Chicago, Ill., for appellees.

Before EVANS and MAJOR, Circuit Judges, and BRIGGLE, District Judge.

EVANS, Circuit Judge.

Does Section 11(1) of the National Labor Relations Act, 29 U.S.C.A. § 161(1), authorize the issuance of a subpoena duces tecum and ad testificandum, where it appears that a charge has been filed by employees with the Board, against their employer, but no complaint has been issued by the Board against said employer? This is the question which this appeal presents.

The Board appealed to the District Court for the enforcement of certain subpoenas by it issued, alleging that appellants, the Barrett Company and R. W. Morton, its president, refused to permit inspection of their books and records, which was necessary to a proper and adequate investigation of the charge which had been filed against them by the Int. Bro. of Firemen and Oilers, Local No. 8, representing employees. Following the preferment of charges, the Board also alleged in its petition for enforcement, that the Regional Director began his investigation to deter-

mine whether a formal complaint should issue against the Company; that the purpose of the examination of defendant's books and documents was to ascertain the sources of materials and the volume thereof, purchased or received, as well as the destination of the finished product, for the period from January 1, 1939 to the date of the subpoenas. This was to determine whether the operations of the Company affected commerce, within the meaning of the Act.

The District Court ordered obedience to these subpoenas, and the appellants, aggrieved thereby, appealed.

Appellants argue that the Board may not order the issuance of subpoenas before a formal complaint against the Company has been issued and served upon it.

Section 11(1) of the Act, following the subheading "Investigatory Powers" and Sections 9 and 10 referred to in said Section 11, are all set forth in the margin.[1]

In determining the extent and scope of powers granted to the Board by these sections, it is necessary to look to the purpose and objectives, generally, of the entire act.

The Board was created to avoid, through adjustment, serious labor disputes which, if they reached the strike stage, necessarily hurt all parties, the public the most. It was created so that employees with complaints might have a neutral tribunal pass on them and, if necessary, correct them.

A fair construction of the three sections here involved, seems to necessitate first, a recognition of powers granted, and, second, that the Act provides, either expressly or impliedly, for the practice and procedure to be followed when the Board's jurisdiction is invoked, and the factual and legal questions are presented for determination.

The first step is the filing of a charge by the employee. Upon its filing, the Board is required to investigate the complaint. In actual practice, it is first obliged to inquire into the employer's business and determine (tentatively, at least) whether that business is interstate. Not until it is reasonably well settled that the employer's business falls within interstate commerce, is it authorized, or at least justified, in issuing a complaint.

Its powers and its duties are closely related. Its duty to investigate before it exercises its power to file a complaint seems to us clear. In fact, its exercise of power without investigation may be justifiably questioned and legitimately criticized.

Certainly few would deny the wisdom of such a course. There may be criticisms

---

[1] "Sec. 11. For the purpose of all hearings and investigations, which, in the opinion of the Board, are necessary and proper for the exercise of the powers vested in it by section 9 and section 10 [sections 159 and 160 of this title]—

"(1) The Board, or its duly authorized agents or agencies, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to any matter under investigation or in question. Any member of the Board shall have power to issue subpoenas requiring the attendance and testimony of witnesses and the production of any evidence that relates to any matter under investigation or in question, before the Board, its member, agent, or agency conducting the hearing or investigation. * * *" 29 U.S.C.A. § 161(1).

"Sec. 9. * * * (c) Whenever a question affecting commerce arises concerning the representation of employees, the Board may investigate such controversy and certify to the parties, in writing, the name or names of the representatives that have been designated or selected. In any such investigation, the Board shall provide for an appropriate hearing upon due notice * * *." 29 U.S.C.A. § 159 (c).

"Sec. 10 (a) The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 8 [158]) affecting commerce. This power shall be exclusive, and shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, code, law, or otherwise.

"(b) Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board, or any agent or agency designated by the Board for such purposes, shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect, and containing a notice of hearing before the Board or a member thereof, or before a designated agent or agency, at a place therein fixed, not less than five days after the serving of said complaint. * * *" 29 U.S.C.A. § 160(a, b).

586

which arise out of making the investigator, also, the trier of the fact. But that criticism, whatever its merits, is in no way involved in our inquiry, which is to ascertain whether the Act required the Board, as appellants contend, to act, that is, to issue the complaint, and *then* investigate the facts—or, as the Government urges, required the Board to investigate the facts set forth in the charge of the employee and issue its complaint only if it finds merit in the charge. In other words, if it appears that reasonable grounds exist for believing the allegation of the employee to be true, and that the employer is engaged in interstate commerce and has been guilty of unfair labor practice condemned by the Act, the Board should act, but not until its *in*vestigation established or tended to establish such facts.

It would seem highly desirable that the Board's position be upheld, for, if not, the employer would be in the unhappy position of being called upon to defend against false charges preferred by malicious or irresponsible parties. Somewhat comparable to such a situation would be the case of a prosecuting attorney who started criminal proceedings first and investigated afterwards.

However, appellants insist that it is not a question of reasonableness of the practice, but one of power conferred by the statute. We are dealing with a grant of powers by Congress, so they assert,—a grant of power to issue subpoenas, which obviously cannot be *inferred,* but exists only when expressly authorized by Congress. So far, we agree with appellants. But what are the powers granted by Sections 9 and 10? Wherein lies the restriction of power to issue subpoenas?

Specifically the questions are: (1) Does Sec. 10(b) give the power to investigate? and (2) if so, are the powers to investigate and to issue subpoenas therefor, restricted by these sections to cases which have reached the stage where a complaint against the employer has been issued by the Board?

Neither the object of the Act, 29 U.S.C. A. § 151 et seq., nor its words justify the narrow construction which appellants place upon it.

Section 11 is under the broad subdivision, "Investigatory Powers." Subsection (1) of said section 11 deals with the issuance of subpoenas and gives to "any member of the Board" the *"power to issue* subpenas" etc. Subpoenas may be issued for the purpose of "requiring the attendance and testimony of witnesses and the production of any evidence that relates to any matter under *investigation."* The power of the Board to issue complaints, to conduct hearings, and to make findings, does not, expressly or impliedly, exclude the investigatory powers. On the other hand, the investigatory powers are complementary to the powers expressly granted to the Board.

█ Section 10(b) does not require the Board to issue a complaint. It expressly provides that the Board "shall *have power to issue* and caused to be served * * * a complaint stating the charges in that respect * * *." "Power to issue" is different from "shall issue." The difference is important. In one the Board's duty is mandatory. It has no discretion. In the other, the Board has a discretion—it acts judicially. It is in the exercise of this discretionary power, that investigation becomes necessary. The power to investigate is a necessary power, which is incidental to the exercise of the power to issue a complaint. It is an implied power, quite as clearly granted as any express power enumerated in said Section 10 (b).

█ Ordinarily, the Board may determine the intra- or inter-state character of the employer's business from the employer itself. If, however, the employer refuses to give the information, the Board, in the exercise of its power to investigate, may secure the information, as here, through the issuance of the subpoena.

█ We are satisfied that the Board's right (as well as its duty) to investigate, and in the course of its investigation, if need be, to issue subpoenas before it files a complaint, is clear. For discussion on a phase of the same question, see Fleming v. Montgomery Ward & Co., 7 Cir., 114 F.2d 384, decided by this court. The power to issue the subpoena and compel the attendance of a witness, in no way involves the right of the witness to refuse to testify because of possibility of self-incrimination. That question is not presented when the issuance of subpoena is the issue. Corretjer v. Draughon et al., 1 Cir., 88 F.2d 116. Moreover, the defendant corporation can not complain because of the incriminating character of the evidence. Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652.

The order of enforcement of the District Court is

Affirmed.

MAJOR, Circuit Judge (dissenting).

I am unable to agree either with the conclusion or the reasons advanced in its support. A study of the Act is convincing that there was no intent on the part of Congress to confer the power claimed. The language employed, in my judgment, clearly negatives such intent.

The question presented is aptly stated in the first paragraph of the opinion. The question, "Does Section 10(b) give the power to investigate" as later stated, is beside the issue. We are not concerned merely with the power of the Board to investigate, but rather with the power to compel respondents to give the information and testimony sought in the aid of such investigation.

All power confered by Sec. 11 is expressly limited by the first paragraph thereof to that vested by Sections 9 and 10. To determine the power conferred by Sec. 11, therefore, it is necessary to ascertain the power "vested by Section 9 and Section 10." Sec. 9 is entitled "Representatives And Elections," and Par. (c) thereof confers the power of investigation. There is no other provision of the Act which expressly confers such power. This express power, however, is limited by the following phrase: "In any such investigation, the Board shall provide for an appropriate hearing upon due notice, * * *." This limitation precludes the thought that the Board is empowered to investigate, and at some later time, in its discretion, conduct an "appropriate hearing." The right to investigate is in connection with such hearing, and not otherwise. Sec. 10(a) empowers the Board to prevent unfair labor practices affecting commerce. Par. (b), upon the filing of a charge, confers the power to issue complaint and notice of hearing. The person complained against is given the right to answer and give testimony at the place and time fixed in the complaint. In other words, such person is entitled to a hearing upon the issues made by the complaint and answer thereto. No express power to investigate is found in Sec. 10. It is argued that because the Board "shall have power to issue * * * a complaint," it follows that its duty in that respect is discretionary and, therefore, it has the implied power to investigate for the purpose of determining how its discretion shall be exercised. Assuming it impliedly has such right, it is a far step to the situation here presented where, in aid of such investigation, it is sought to compel respondents not only to appear personally and testify, but to produce their books and records. In other words, they are required, under compulsion, to furnish the Board with the testimony and evidence by which they may be charged with a violation of law.

In Par. (c) of Sec. 10, repeated reference is made to the testimony taken by the Board, all of which, however, is in connection with the hearing therein required. Sections (e) and (f) provide that when a petition for enforcement is filed by the Board, or a petition for review by the employer, that "a transcript of the entire record in the proceeding, including the pleadings and testimony * * *" shall be certified by the Board and filed in the Court. The language in all of these paragraphs is clearly to the effect that the testimony and evidence referred to is that taken at a hearing upon the issues formed by the complaint and answer. There is not the slightest intimation that evidence or testimony is to be taken in any other manner, or at any other place or time.

It is apparent that the hearings referred to in Sec. 11 have reference to the hearings provided for in Sec. 10, and that the investigations referred to have reference to the investigations provided for in Sec. 9. In any event, the right of subpoena provided for in Sec. 11(1) in aid of investigation can be employed only in connection with a hearing upon issues between the parties. Whatever doubt there may be as to the soundness of this interpretation is dispelled by the last sentence [1] of Sec. 11(1), which provides: "* * * Such attendance of witnesses and the production of such evidence may be required from any place in the United States or any Territory or possession thereof, at any designated place of hearing."

Is there room for doubt that the words "at any designated place of hearing" mean other than a hearing upon issues existing between parties? There must be a negative answer to this question, unless an ex-parte inspection of documents and examination of witnesses can be designated as a

---

[1] This sentence is omitted from the quotation in the footnote of the opinion.

"hearing." To do so would violate its common and universally accepted meaning.

Under the construction sought, subscribed to by the majority, there is an implied power in Sec. 10 to investigate, and to have compulsory process irrespective of a hearing, while under Sec. 9, where the power to investigate is expressly conferred, it was limited to, and in connection with, an "appropriate hearing." To me this is a strange process of reasoning, the result of which is, by implication, to confer a power under Sec. 10 where Congress remained silent—broader than the power conferred under Sec. 9 where Congress expressed itself.

The information sought by the subpoena and testimony is for the purpose of confirming an allegation contained in the charge filed with the Board, and which may be used by it in support of a complaint against the respondent. If it has a right to thus obtain evidence in support of one issue, it would seem that it likewise has such right. as to all essential allegations contained in the charge. The effect of such authority is to permit the Board to judge a case in advance, a procedure calculated to impair, if not destroy, a fair hearing upon a complaint subsequently made. This is especially true when it is considered that the same agency which is to make this so-called preliminary investigation and decide in advance, if it so desires, one of the issues which later may be controverted, will, in the latter event, be again called upon to make a second decision. To say that such investigation is merely for the purpose of tentatively determining an issue which may later arise, is without substance. For aught that appears, the Board, with the aid of the subpoena in question, will be enabled to make a complete and final determination of a question which later may become a controverted issue. This is so because the Board will have all the evidence possessed by the Union which filed the charge, as well as that possessed by respondents,— all this before a complaint has issued and before any issue has been made between the Board and respondents.

The opinion makes the inapt illustration of "a prosecuting attorney who started criminal proceedings first and investigated afterwards." It would be a procedure, however, with which I am not familiar, for a prosecuting attorney, upon receiving a complaint, to arm himself with a subpoena directing the suspected person to appear at his office with books and records and to submit to examination all for the purpose of determining whether he should be charged with an offense. Of course, the prosecuting attorney has a right, as I assume has the Labor Board, to investigate the allegations of the charge with a view of ascertaining if it is in conformity with the statute upon which it is predicated, is made in good faith, and the information or knowledge possessed by the one who files the charge in support thereof. Other persons, no doubt, may be interviewed for the purpose of ascertaining if there is reasonable cause to act upon the charge preferred. Any authority possessed in this respect, however, is a far cry from the power claimed in the instant matter.

The opinion apparently places some reliance upon the Board's argument that its position should be sustained as a matter of public policy. It is pointed out that the power claimed is essential to the efficient administration of the Act, and even goes to the extent of urging that it is necessary for the protection of the employer. There may be those, however, who think the Board already has sufficient power, and would desire to take issue with the argument here presented. In any event the legitimate forum for such argument is Congress and not the courts. It is conceded that the power claimed under Sec. 10 is not expressed, but that it should be implied. As I have attempted to point out, it is my judgment that such a construction is not tenable. It is well to keep in mind, in construing this Act as well as any other, that Congress is capable of employing language to express that which was intended. If it had intended to delegate the power now claimed, it could have done so by the use of a few simple words. In Federal Trade Commission v. American Tobacco Company, 264 U.S. 298, 305, 44 S.Ct. 336, 337, 68 L.Ed. 696, 32 A.L.R. 786, the court used language which, to my mind, is peculiarly appropriate. It said:

" * * * Anyone who respects the spirit as well as the letter of the Fourth Amendment would be loath to believe that Congress intended to authorize one of its subordinate agencies to sweep all our traditions into the fire (Interstate Commerce Commission v. Brimson, 154 U.S. 447, 479, 14 S.Ct. 1125, 38 L.Ed. 1047), and to direct fishing expeditions into private papers on the possibility that they may disclose evi-

589

dence of crime. We do not discuss the question whether it could do so if it tried, as nothing short of the most explicit language would induce us to attribute to Congress that intent. * * *"

It is my judgment that the order appealed from should be reversed.