EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Appellant,

v.

BETHLEHEM STEEL
CORPORATION, Appellee.

No. 84–1364.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 4, 1985.

Decided June 26, 1985.

Colleen M. O'Connor, Washington, D.C. (Johnny J. Butler, Gen. Counsel (Acting);

**428**

Philip B. Sklover, Associate Gen. Counsel; Vincent Blackwood, Asst. Gen. Counsel, Washington, D.C., on brief), for appellant.

G. Stewart Webb, Jr., Baltimore, Md. (Leslie A. Vial; Venable, Baetjer & Howard, Baltimore, Md., on brief), for appellee.

Before SPROUSE and CHAPMAN, Circuit Judges, and KISER, United States District Judge for the Western District of Virginia, sitting by designation.

SPROUSE, Circuit Judge:

The Equal Employment Opportunity Commission appeals from the district court's order denying enforcement of the Commission's subpoena *duces tecum* issued for personnel records of 155 named present and former employees of Bethlehem Steel Corporation ("Bethlehem") in connection with an employment discrimination charge against Bethlehem that had been pending for five years at the time the Commission issued the subpoena. We reverse and instruct the district court to order the subpoena enforced.

The Shipyard Workers for Equality ("Workers"), an unincorporated group organized in 1964 for the purpose of providing assistance to Bethlehem employees concerning civil rights issues, filed an employment discrimination charge against Bethlehem and two unions[1] on July 14, 1977. The charge alleged discrimination at Bethlehem's Sparrows Point plant as follows:

> The above named company and unions discriminated against this organization and other black persons because of race. The organization and its members has [sic] been injured by this discrimination. The discrimination includes, but is not limited to hiring, recruitment, assignments, transfers, promotions, wages, terms, conditions and priviledges [sic] of employment.

The individual signing the complaint was Oscar C. Hoggs, who was also a party, individually, in another discrimination action against Bethlehem filed in 1971 and settled in 1980.

The EEOC, due to a severe backlog of charges existing in 1977, lodged the Workers' charge in the "backlog" section of its Baltimore, Maryland office. The charge, however, was served on Bethlehem in September 1977, accompanied by a notice that Bethlehem would be contacted when the investigation had commenced and that Bethlehem would be required to preserve all relevant personnel records until the charge was resolved. In October 1977 Bethlehem wrote to the Commission stating its opinion that the Workers' charge should be administratively closed by the Commission because the activities underlying the charge were similar to those outlined in a then-pending civil action initiated by Oscar Hoggs which was based on his 1971 charge. The EEOC never responded to this letter.

The Workers' charge was activated and assigned to an investigator in early 1980. Mr. Hoggs supplied the Commission with a certified list of the names, addresses, and telephone numbers of approximately 165 present and former Bethlehem employees on whose behalf the Workers' charge had been filed. The EEOC commenced its preliminary investigation in March 1981 by forwarding an informal request to Bethlehem asking for information regarding employment policies at the Sparrows Point shipyard. After Bethlehem refused to provide this information, the Commission's District Director issued the subpoena in question on September 24, 1982, demanding copies of the personnel files of the employees whose names were provided by Mr. Hoggs. On October 5, 1982, Bethlehem filed a petition with the EEOC seeking to have the subpoena revoked. Bethlehem's petition was denied on November 5, 1982, and an administrative appeal from this decision was denied on August 1, 1983. Despite the adverse determination, Bethlehem persisted in its refusal to comply with the

---

1. The charge named the Industrial Union of Maritime and Shipbuilding Workers of America, AFL–CIO, and its local. The subpoena involved in this action, however, pertains solely to Bethlehem.

subpoena and the Commission sought court enforcement on September 25, 1983.

Before the district court, Bethlehem contended that the subpoena should not be enforced because the charge was not valid, that the EEOC was estopped from continuing its investigation of the Workers' charge because it did not respond to Bethlehem's October 1977 letter offering its opinion that the file should be administratively closed, and that because the Commission had delayed its investigation for over three years, laches barred enforcement of the subpoena. The district court, relying only on the laches argument, refused to enforce the subpoena, holding that the EEOC's delay was unreasonable and had prejudiced Bethlehem. On appeal, Bethlehem argues that the district court was correct in its laches ruling and also reasserts its contentions that the subpoena should not be enforced because the charge was invalid and that the EEOC is estopped from pursuing its investigation. We do not agree with these contentions and reverse.

■ Bethlehem's estoppel argument is so devoid of merit that it deserves little discussion. The EEOC was under no duty to respond to the 1977 letter and any unilateral dismissal would violate 42 U.S.C. §§ 2000e–5(b) and (f)(1) which provide that charges may be closed only upon notice to the charging party and respondent. We turn next to the "valid charge" issue.

■ This argument is based on three assertions: that aggrieved persons were not identified and did not exist at the time the charge was filed; that the Commission did not, at the time the charge was filed, verify the authorization of the charges by the persons on whose behalf it was filed; and that the charge did not sufficiently notify Bethlehem of the times and circumstances of the alleged discriminatory actions.

29 C.F.R. § 1601.7(a) (1984) provides:
A charge on behalf of a person claiming to be aggrieved may be made by any person, agency, or organization. The written charge [sent to the employer] need not identify by name the person on whose behalf it is made. The person making the charge, however, must provide the Commission with the name, address, and telephone number of the person on whose behalf the charge is made.

The persons on whose behalf the charges were filed were not identified in the charge itself. Their identities were furnished to the EEOC in 1980 when the investigation began. Bethlehem contends that by this regulation, persons on whose behalf a charge is filed must be identified at the time the charge is filed. It cites no authority and we find none. Section 706(b) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(b) (1982), provides that charges "shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires." In exercising the wide discretion given to it by Congress, the EEOC issued the regulation appearing at 29 C.F.R. § 1601.7(a). The Commission interprets that regulation to permit supplying identification information after the filing of the complaint. That strikes us as a reasonable interpretation. Abuse of the Commission's responsibility, through delay or otherwise, may be an available defense at a trial on the underlying charge, but it is premature to assert such alleged invalidity as a ground for denying enforcement of an investigative subpoena. Bethlehem's alternative argument, that because these persons were not identified in 1977 they legally did not exist, is specious.

The regulation further provides that "[d]uring the investigation, Commission personnel shall verify the authorization of such charge by the person on whose behalf the charge is made." 29 C.F.R. § 1601.-7(a). Bethlehem would have us interpret that regulatory language to require verification at the filing of the charge. We decline to contort language with a clearly contrary meaning.

Bethlehem also asserts that the notice of the charge provided to it by the EEOC is invalid because the charge did not sufficiently notify Bethlehem of the circumstances giving rise to the alleged discrimination and that alleged infirmity defeats enforcement of the EEOC's investigative

subpoena. We think that argument is foreclosed by the Supreme Court's decision in *EEOC v. Shell Oil Co.,* 466 U.S. 54, 104 S.Ct. 1621, 80 L.Ed.2d 41 (1984), where the Court held a similarly worded notice sufficient.[2]

Quite apart from the merit of any of these contentions concerning the validity of the charge, however, the district court did not base its refusal to enforce the subpoena on that theory. We think with good reason. The charge is now being pursued in the investigative stage. After the investigation the EEOC may or may not determine that the charge warrants further consideration. It is after that determination that issues as to the validity of the charge should be advanced and resolved.

■ We turn to the crucial issue— whether the district court properly applied the doctrine of laches to bar enforcement of the Commission's subpoena. The rule is clear both in this court and elsewhere that in order for a charged party to successfully resist an EEOC subpoena on the ground of laches, it must demonstrate that the EEOC was guilty of an unreasonable delay and that the charged party was thereby prejudiced. *Bernard v. Gulf Oil Co.,* 596 F.2d 1249 (5th Cir.1979); *EEOC v. Westinghouse Electric Corp.,* 592 F.2d 484 (8th Cir.1979); *EEOC v. South Carolina National Bank,* 562 F.2d 329 (4th Cir.1977).

■ In *EEOC v. South Carolina National Bank,* 562 F.2d 329, 332 (4th Cir. 1977), we said:

[G]eneralized allegations of irreparable harm from the passage of time do not amount to a showing of prejudice. If the records sought by the commission are now unavailable, they need not be produced; if they are available, no prejudice has been suffered.

In *South Carolina National Bank,* a charge was filed in December 1971 and the employer was notified of the charge in March 1972. The EEOC commenced an investigation in September 1974 and, in May 1975 issued a subpoena seeking information from the employer regarding certain policies as well as specific data concerning the individual who had filed the charge. After the employer refused to comply with the subpoena, the Commission sought enforcement in the district court. The district court denied enforcement on various grounds, including laches. In reversing the decision of the district court, we held that an employer, in order to establish prejudice, must offer more than general allegations.

We see no reason here to modify this rule requiring evidence of prejudice in subpoena enforcement cases. The EEOC, in its subpoena, lists the individuals whose records it seeks. Bethlehem has at no time here or below offered evidence that it did not have the personnel records sought by the subpoena. Nor did the district court assign this as a reason for its decision. As a justification for interposing the defense of laches at this stage, Bethlehem claims that the employment of some of the involved personnel has been terminated, that six have died, and that the memory of management personnel concerning the allegations contained in the charge has dimmed. These strike us as possible flaws that should be considered by the EEOC, if they are substantiated by the investigation as posing serious problems to Bethlehem. These are not reasons, however, to refuse

---

2. In *Shell Oil,* the original notice of the charge served on the employer did not specify the date on which the alleged unlawful employment practices commenced. Over a year later, during the pendency of a suit brought by the employer to quash the subpoena, the charge was amended to allege that the employer had engaged in continuing unlawful employment practices from at least July 2, 1965 to the present. The opinion indicates that this amendment was made out of an abundance of caution in view of the decision of the Ninth Circuit in *EEOC v. Dean Witter Co.,* 643 F.2d 1334, 1338 (9th Cir.1980), which held

that the charge must contain a "good faith estimate of the probable time periods" involved. *Shell Oil,* 466 U.S. at —— n. 4, 104 S.Ct. at 1626 n. 4, 80 L.Ed.2d at 51 n. 4. In this case, we note that the questionnaire appended to the notice of the charge sent to Bethlehem in 1981 requested company policies, EEOC reports, and promotion information during 1976, 1977, 1978, 1979, and 1980. Under these circumstances, it is apparent that the notice served on Bethlehem adequately apprised the company of the time period within which the alleged unfair employment practices took place.

enforcement of the subpoena. Bethlehem obviously cannot produce what it does not possess. If it cannot produce the documents called for in the subpoena, Bethlehem can indicate that as a reason for its noncompliance. If Bethlehem has the requested material, the passage of time will not have added to its administrative burden in making them available to EEOC personnel. If there were such added burden, Bethlehem has nowhere in the record or in argument sufficiently demonstrated it.

It is unfortunate that the EEOC delayed the investigation of this charge for so long. The only explanation it offers is that an inadequate staff created a backlog. Simple concepts of justice require imposition of some time limit even when confronted by such excuses, but because there is not here the precedentially required prejudice resulting from the delay, we need not address that problem. We are confident that the EEOC, in exercising the subpoena authority given to it by this decision, will recognize the difference between the fulfillment of national employment policy objectives and harassment resulting from dilatory agency practice.

REVERSED AND REMANDED WITH INSTRUCTIONS.