**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Appellant,**

v.

**MARYLAND CUP CORPORATION, Appellee.**

No. 84–2128.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 2, 1985.

Decided Feb. 28, 1986.

Colleen M. O'Connor (Johnny J. Butler, Acting Gen. Counsel, Gwendolyn Young Reams, Acting Associate Gen. Counsel, Vella M. Fink, Asst. Gen. Counsel, E.E. O.C., Washington, D.C., on brief), for appellant.

Bruce S. Harrison (Eric Hemmendinger, Shawe & Rosenthal, Baltimore, Md., on brief), for appellee.

Before PHILLIPS and SNEEDEN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge:

The Equal Employment Opportunity Commission appeals the district court's order denying in part and granting in part enforcement of an administrative subpoena issued to Maryland Cup Corporation. We vacate the order and remand with instructions to enforce the subpoena subject to a slight modification.

On February 9, 1979, the EEOC served notice on Maryland Cup Corporation that a member of the commission had filed a charge of employment discrimination against the company, alleging that since 1974 Maryland Cup at five facilities had discriminated against blacks and women with respect to recruitment, hiring, training, job assignments, promotions, and salaries, in violation of section 703(a) of Title VII, 42 U.S.C. section 2000e–2(a).[1] The EEOC sent Maryland Cup a questionnaire seeking information on the company's organization; information on its policies concerning recruitment, hiring, and promotion; and a list of employees hired, promoted, or fired at each facility for the years 1976 through 1979, indicating the race and sex of these individuals. The company did not produce this information but attempted to negotiate with the EEOC, requesting that the commission join it in an internal audit. After prolonged negotiations the company produced some of the requested documents. The company explained that the EEOC would have to pay the cost of copying the remainder of the documents requested. The company also refused to compile the list of employees.

1. The EEOC is required to serve notice on an employer within 10 days of any charge of employment discrimination filed with the commission. Section 706(b), 42 U.S.C. § 2000e–5(b). Section 706(b) also requires the EEOC to investigate all charges, as does section 707(e), 42 U.S.C. § 2000e–6(e).

On March 1, 1982, the EEOC served the subpoena at issue. Maryland Cup appealed the subpoena within the commission. As modified upon administrative appeal, the subpoena sought payroll and personnel summary cards for the years 1976 through 1980, containing information on each employee's race, sex, job classification, promotions, and salary. The subpoena also sought, for the same years, documents describing applicants' race, sex, testing and interviewing results, and referral sources. The subpoena demanded documents describing the company's training programs and the race, sex, and success of each trainee. Finally, the subpoena sought a list of all persons hired from 1976 through 1980, identified by sex and race.[2]

Maryland Cup notified the EEOC that it would not produce the required documents unless the EEOC agreed to reimburse it for the costs of copying the documents. Alternatively, the company offered to allow the EEOC to bring its own copier to the company's facility to copy the documents. The company agreed to compile a list indicating race of employees for the years 1979 through 1981. The company refused to do so for the years 1976 through 1978, on the ground that this information was not documented and could be compiled only by examining photo identification badges still existing for about 40 percent of the former employees and by interviewing these employees' former supervisors and coworkers.

On July 26, 1984, the EEOC petitioned in district court for an order to show cause why the subpoena should not be enforced. At the hearing on the enforcement petition, the EEOC offered to copy the documents at its Baltimore office, one box at a time, to save the company the expense of making copies. The EEOC refused to compromise its demand for racial identification of persons employed from 1976 through 1978. The district court ruled that the EEOC lacked the authority to require the production of documents without reimbursing the

company for copying costs. Accordingly, the court declined to enforce the portion of the subpoena requiring Maryland Cup to produce the documents. The court instead required the company only to make the documents available to the EEOC on the company's premises and to allow the EEOC to copy the documents there, at the EEOC's expense. Alternatively, the EEOC could select the documents to be copied by Maryland Cup and later reimburse the company at a negotiated price per page. The district court also ruled that the EEOC had no authority to require the company to conduct an internal investigation in order to respond to a subpoena. Consequently, the court declined to enforce the subpoena's requirement that Maryland Cup compile data on the race and sex of persons employed by the company during the years 1976 through 1978.

The EEOC appeals both rulings. Because the district court's rulings were based on the legal conclusion that the EEOC lacked the authority to make the demands, we review the district court's order for errors of law. *FTC v. Texaco, Inc.*, 555 F.2d 862, 882 (D.C.Cir.1977) (en banc); *see Pullman-Standard v. Swint*, 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982).

I

Administrative subpoenas are subject only to limited judicial review. *See, e.g., NLRB v. G.H.R. Energy Corp.*, 707 F.2d 110, 113 (5th Cir.1982) (interpreting a statute granting a subpoena power identical to that of the EEOC). Upon petitioning for enforcement of an administrative subpoena, the issuing agency must make a threshold showing that the subpoena is within the agency's authority, that the agency has satisfied statutory requirements of due process, and that the information sought is relevant and material to the investigation. *EEOC v. Children's Hospital Medical Center*, 719 F.2d 1426, 1428

---

**2.** The subpoena also demanded a tour of the facilities. The district court declined to enforce this aspect of the subpoena, without prejudice to

the EEOC's right to renew the motion. The EEOC does not appeal this ruling.

(9th Cir.1983) (en banc); *see United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–255, 13 L.Ed.2d 112 (1964). Once the agency makes this showing, the court must enforce the subpoena unless the party being investigated demonstrates that the subpoena is unduly burdensome. *EEOC v. Children's Hospital Medical Center,* 719 F.2d at 1428; *EEOC v. Bay Shipbuilding Corp.,* 668 F.2d 304, 313 (7th Cir.1981); *EEOC v. South Carolina National Bank,* 562 F.2d 329, 332 (4th Cir.1977). *Cf. Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 217, 66 S.Ct. 494, 509, 90 L.Ed. 614 (1946).

■ The EEOC has met its threshold burden in this case. The EEOC is authorized to issue subpoenas by section 710 of Title VII, 42 U.S.C. section 2000e–9, incorporating by reference section 11 of the National Labor Relations Act, 29 U.S.C. section 161.[3]

Section 11 of the National Labor Relations Act requires that the commission offer an internal appeal mechanism. The commission must revoke the subpoena "if in its opinion the evidence whose production is required does not relate to any matter under investigation" or "does not describe with sufficient particularity the evidence whose production is required." 29 U.S.C. § 161(1). The EEOC complied with these due process requirements, granting Maryland Cup an administrative appeal pursuant to its internal regulations. *See* 29 C.F.R. § 1601.16 (1984). The subpoena was modified slightly on appeal. The EEOC then properly sought the aid of the district court in enforcing the subpoena. *See* 29 U.S.C. § 161(2).

■ The evidence sought is described with sufficient particularity so that Maryland Cup can readily identify the evidence required. *See NLRB v. G.H.R. Energy*

*Corp.,* 707 F.2d 110, 114 (5th Cir.1982) (subpoena requiring personnel records of certain categories of employees held to be sufficiently particularized). Moreover, the evidence sought is relevant and material to the investigation. Documents containing information on the race, sex, and salaries of applicants, hirees, trainees, and promoted employees are relevant and material to the charge of race and sex discrimination in hiring, promotions, training programs, and salaries. Although Maryland Cup argues that information on the race and sex of employees during the years 1976 through 1978 is "of limited relevance" because the charge was filed in 1979, such evidence is relevant and material to the question of whether the company engaged in a pattern of discrimination. *Graniteville Co. v. EEOC,* 438 F.2d 32, 42 (4th Cir.1971). Moreover, the evidence is relevant to the issue of back pay liability. For a charge filed in 1979, the company could be liable for back pay from 1977. *See* Title VII, § 706(g), 42 U.S.C. § 2000e–5(g). *See also EEOC v. Shell Oil Co.,* 466 U.S. 54, 68, 104 S.Ct. 1621, 1631, 80 L.Ed.2d 41 (1984) (noting with approval that courts have "afforded the Commission access to virtually any material that might cast light on the allegations against the employer").

Having found that the EEOC has met its threshold burden, we turn to Maryland Cup's argument that the subpoena should not be enforced because compliance would be burdensome. The company argues first that it cannot be required to produce the documents at the EEOC's office. Rather, the company contends that it need only provide access to the documents and allow the EEOC to copy them.

■ To the contrary, the statute grants the EEOC the right to demand the production of documents as well as the right to demand access to them. Section 11 of the

---

3. Section 710 of Title VII, 42 U.S.C. § 2000e–9, provides: "For the purposes of all hearings and investigations conducted by the Commission or its duly authorized agents or agencies, section 161 of Title 29 shall apply." The referenced section grants the authority to issue "subpoenas requiring the attendance and testimony of witnesses or the production of any evidence in such proceeding or investigation...." 29 U.S.C. § 161(1). The EEOC's authority to conduct investigations is granted in sections 706(b) and 707(e) of Title VII, 42 U.S.C. §§ 2000e–5(b) and 2000e–6(e).

National Labor Relations Act provides that "the production of ... evidence may be required from any place in the United States or any Territory or possession thereof, at any designated place of hearing." 29 U.S.C. § 161(1); *see also Cudahy Packing Co. v. Holland,* 315 U.S. 357, 364, 62 S.Ct. 651, 655, 86 L.Ed. 895 (1942) (dictum) (FTC subpoena may compel production of documents at distant places). The statute accordingly authorizes the EEOC to demand that the documents be delivered across town from Maryland Cup's Baltimore office, the current location of the documents, to the EEOC's Baltimore office. *See EEOC v. General Motors Acceptance Corp.,* 26 Empl.Prac.Dec. (CCH) ¶ 31,953 (E.D.Wis.1981) (company required to deliver documents to EEOC office 1000 miles distant).

Maryland Cup next argues that the subpoena is burdensome in that it demands "a potentially unlimited number of documents." We find, however, that the EEOC is entitled to all documents relevant to the charge. *EEOC v. Shell Oil Co.,* 104 S.Ct. at 1631. The possibility that the EEOC may at some time subpoena other documents does not affect the company's responsibility to produce documents now demanded.

Maryland Cup argues further that even if it is required to produce the documents for the EEOC, it is entitled to be reimbursed for the costs of copying the documents so that it may retain the originals.

The statute does not grant the party subject to a subpoena the right to reimbursement for costs of reproducing documents. 29 U.S.C. § 161; *see FTC v. Texaco, Inc.,* 555 F.2d 862, 883 (D.C.Cir.1977) (en banc) (holding that to impose reproduction costs on the FTC would derogate its power to issue administrative subpoenas). Some courts have conditioned enforcement of administrative subpoenas on the agency's payment of reproduction costs, if the party subject to the subpoena makes a showing that compliance with the subpoena

would be unduly burdensome. The burden of proving that an administrative subpoena is unduly burdensome is not easily met. *See, e.g., FTC v. Rockefeller,* 591 F.2d 182, 190 (2d Cir.1979). The party subject to the subpoena must show that producing the documents would seriously disrupt its normal business operations. *EEOC v. Bay Shipbuilding Corp.,* 668 F.2d 304, 313 (7th Cir.1981).

Maryland Cup has not made the required showing of serious disruption. The company merely makes the conclusory allegations that it needs constant access to all of the documents and that it fears that the EEOC will lose the documents. Such allegations do not constitute evidence that the company's normal operations will be seriously disrupted if it produces the documents. Indeed, the EEOC has offered to diminish the potential disruption by offering to copy the documents one box at a time at its own office. If Maryland Cup continues to fear the loss of the documents under this arrangement, it may assign an employee to accompany the documents while they are being copied.

Finally, the company argues that the subpoena is governed by Federal Rule of Civil Procedure 45(b), which provides that a court may quash or modify a subpoena duces tecum "if it is unreasonable and oppressive," or condition enforcement on the advancement of the costs of reproducing any subpoenaed documents.

The Advisory Committee's Notes to Rule 45 state that it does not apply to administrative subpoenas. The Notes specifically list section 11 of the National Labor Relations Act, 29 U.S.C. section 161, as granting a subpoena power to which Rule 45 does not apply. Some courts have referred by analogy to Rule 45 to determine the appropriate standards for enforcing administrative subpoenas. *See, e.g., New Orleans Public Service, Inc. v. Brown,* 507 F.2d 160, 165 (5th Cir.1975). Even if we were to apply Rule 45 by analogy, we would not be called upon to modify the subpoena, because Maryland Cup has not

demonstrated that the subpoena is unreasonable and oppressive.

We conclude that the EEOC is entitled to enforcement of that portion of the subpoena requiring Maryland Cup to produce documents at the EEOC's office.

## II

Maryland Cup also contends that the EEOC cannot require it to gather information about the race of former employees. The company's argument is threefold. First, the company argues that as a matter of law the EEOC cannot require the company to prepare documents but can only require the company to grant access to existing documents. Second, the company argues that even if the subpoena power extends to the preparation of documents, the company may only be required to compile data from existing documents. It cannot be required to gather information from photographs and interviews. Finally, the company contends that even if the EEOC may require the company to gather information, the requirement is unduly burdensome in this case.

█ The subpoena power of the EEOC is not limited to the production of documents already in existence. Rather, the enabling statute grants the EEOC broad authority to require "the production of any evidence." National Labor Relations Act § 11(1), 29 U.S.C. § 161(1). As applied to the EEOC, this phrase dates from the 1972 amendments to Title VII of the Civil Rights Act,[4] which strengthened the EEOC's enforcement power by giving the EEOC the authority to bring civil actions against employers and to intervene in private litigation. Title VII §§ 706(f)(1) and (2), 42 U.S.C. §§ 2000e–5(f)(1) and (2). Accordingly, the 1972 amendments also expanded the EEOC's investigative power. Prior to the 1972 amendments, the EEOC had the authority only to demand "access to, for the purposes of examination, and the right to copy any evidence of any person being investigated or proceeded against...."

4. Pub.L. 92–261, 86 Stat. 103 (1972).

Section 709(a), 42 U.S.C. § 2000e–8(a) (1970). The terms "copy" and "examination" imply that the EEOC's right of access then extended only to existing documents. Similarly, section 710(a), 42 U.S.C. section 2000e–9(a) (1970), only authorized the EEOC to "require the production of documentary evidence."

In 1972 section 710(a) was deleted. It was replaced by a provision granting the EEOC the subpoena power enjoyed by the National Labor Relations Board. Section 710, 42 U.S.C. § 2000e–9. This subpoena authority extends generally to "any evidence." National Labor Relations Act section 11(1), 29 U.S.C. § 161(1).

Thus, in the 1972 amendments Congress extended the EEOC's investigative power, no longer confining the EEOC to the power to demand "documentary evidence" but granting it the power to subpoena "any evidence." We conclude that the EEOC has the authority to compel the company to produce evidence that does not presently exist in documentary form. *See EEOC v. Bay Shipbuilding Corp.*, 668 F.2d 304, 313 (7th Cir.1981); *EEOC v. New Orleans Public Service, Inc.*, 507 F.2d 160, 164–65 (5th Cir.1975); *Circle K Corp. v. EEOC*, 501 F.2d 1052, 1054–55 (10th Cir.1974); *EEOC v. United States Fidelity and Guaranty Co.*, 414 F.Supp. 227, 242, 244 (D.Md.), *aff'd*, 538 F.2d 324 (4th Cir.1976) (table).

Maryland Cup's contention that it cannot be required to gather information misapprehends the scope of an administrative subpoena. Section 11 of the National Labor Relations Act provides that the subpoena power extends to "the production of any evidence in his [the respondent's] possession *or under his control.*" 29 U.S.C. § 161(1) (emphasis added).

We believe that this language includes the authority to require the respondent to compile evidence that is not in documentary form. The Supreme Court explained in *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 216, 66 S.Ct. 494, 509, 90 L.Ed. 614 (1946), that an administrative

agency's power to issue subpoenas, a power that is part of its "investigative function, in searching out violations with a view to securing enforcement of the Act, is essentially the same as ... the court's in issuing other pretrial orders for the discovery of evidence...."

The fact that the information sought exists in the minds of the supervisors and workers, not in the minds of its senior managers, does not absolve the company from seeking out that information. To the contrary, all relevant information within the company's control is subject to the EEOC's subpoena power. *Cf.* Fed.R. Civ.P. 33(a) (respondent to interrogatory "shall furnish such information as is available to the party"); *NLRB v. Rockwell-Standard Corp.*, 410 F.2d 953, 958 (6th Cir.1969).

Maryland Cup contends that compiling this evidence would be unduly burdensome because interviewing the supervisors and coworkers of former employees would cost an estimated $75,000.

Maryland Cup has not shown that the cost of gathering this information is unduly burdensome in the light of the company's normal operating costs. *Cf. United States v. Davey*, 543 F.2d 996, 1001 (2d Cir.1976). Nor has the company shown that gathering the information would threaten its normal business operations. In the absence of such a threat, the subpoena is enforceable. *EEOC v. A.E. Staley Manufacturing Co.*, 711 F.2d 780, 788 (7th Cir.1983); *EEOC v. Bay Shipbuilding Corp.*, 668 F.2d at 313; *FTC v. Texaco, Inc.*, 555 F.2d at 882; *see also EEOC v. United States Fidelity & Guaranty Co.*, 414 F.Supp. 227, 244 (D.Md.), *aff'd*, 538 F.2d 324 (4th Cir.1976).

Thus, we conclude that the EEOC has the authority to require Maryland Cup to inspect photo identification badges and to interview supervisors and other employees in order to ascertain the race of former employees. Maryland Cup cannot be compelled to interview former supervisors who are no longer employed by the company, because the company no longer has access to or control over these persons. *See EEOC v. Bethlehem Steel Corp.*, 765 F.2d 427, 430–31 (4th Cir.1985). Nevertheless, the company must furnish the EEOC a list of employees and supervisors no longer with the company, along with their last known addresses and telephone numbers, so that the EEOC may contact those persons.

We vacate the order of the district court and remand with instructions to enforce the subpoena, except insofar as it requires the company to retrieve evidence from persons no longer under its control. On remand the district court should also set up a schedule for compliance with the subpoena, so that the production of documents and the gathering of information about the race and sex of the company's employees may proceed without delay.

VACATED AND REMANDED WITH INSTRUCTIONS.

SNEEDEN, Circuit Judge, concurring:

I concur in the result reached by the panel on the facts of this case. However, I do not adopt certain broad language in the majority's opinion which is unnecessary to decide the case before us.

Specifically, I object to language on page eight of the opinion that states "Maryland Cup next argues that the subpoena is burdensome in that it demands 'a potentially unlimited number of documents.' We find, however, that the EEOC is entitled to all documents relevant to the charge." Similarly, I do not approve of language on page thirteen of the opinion that states "all relevant information within the company's control is subject to the EEOC's subpoena power." Taken together, these statements may suggest an unlimited subpoena power for the EEOC and an invitation to conduct fishing expeditions. I am certain this result was not the intent of Congress.

Furthermore, the facts of this case indicate that it was not unduly burdensome for the employer to create evidence by interviewing present and former employees.

However, I would limit this holding to the specific facts before us.