**NATIONAL LABOR RELATIONS BOARD, Petitioner–Appellee,**

v.

**CAROLINA FOOD PROCESSORS, INCORPORATED, Respondent–Appellant.**

**United Food And Commercial Workers International Union and Local 204, Amicus Curiae.**

No. 95–1678.

United States Court of Appeals, Fourth Circuit.

Argued March 4, 1996.

Decided April 22, 1996.

---

**ARGUED:** James Edward Gates, Maupin, Taylor, Ellis & Adams, P.A., Raleigh, North Carolina, for Appellant. Paul Alton Ades, National Labor Relations Board, Washington, D.C., for Appellee. Jonathan Ross Harkavy, Patterson, Harkavy & Lawrence, Greensboro, North Carolina, for Amicus Curiae. **ON BRIEF:** Robert A. Valois, William P. Barrett, Maupin, Taylor, Ellis & Adams, P.A., Raleigh, North Carolina, for Appellant. Frederick L. Feinstein, General Counsel, Linda Sher, Acting Associate General Counsel, Margery E. Lieber, Assistant General Counsel for Special Litigation, Eric G. Moskowitz, Deputy Assistant General Counsel, National Labor Relations Board, Washington, D.C, for Appellee. Michael G. Okun, Patterson, Harkavy & Lawrence, Greensboro, North Carolina, for Amicus Curiae.

Before HAMILTON, WILLIAMS, and MICHAEL, Circuit Judges.

Affirmed by published opinion. Judge WILLIAMS wrote the opinion, in which Judge HAMILTON and Judge MICHAEL joined.

## OPINION

WILLIAMS, Circuit Judge:

Carolina Food Processors, Incorporated appeals an order of the district court enforcing a subpoena duces tecum and subpoena ad testificandum issued by the National Labor Relations Board (the Board). Carolina Food asserts that the subpoenas are unenforceable because the Board failed to provide a hearing for the return of the subpoenas and because the subpoenas constitute impermissible pretrial discovery, were issued in violation of Carolina Food's due process rights, and are impermissibly vague, overbroad, and unduly burdensome. Finding these assertions to be without merit, we affirm.

## I.

The present dispute arises from an unsuccessful attempt by the United Food and Commercial Workers Union, Local 204, AFL–CIO (the Union) to unionize Carolina Food's hog slaughtering and processing plant in Tar Heel, North Carolina. On July 8, 1994, the Union filed a petition for a representation election, designating a bargaining unit that included "[a]ll regular full-time and part-time production and maintenance employees," but excluded "Office clerical employees, Quality Control Employees, and all Supervisors, Guards and Professional employees." (J.A. at 4.) Carolina Food and the Union later entered a stipulated election agreement that defined the bargaining unit in the same way as the petition, except that quality-control employees were not specifically excluded. The Union subsequently lost the election.

In response to its election loss, the Union filed charges with the Board alleging unfair labor practices by Carolina Food. In its fourth amended charge, the Union asserted that a majority of bargaining-unit employees had signed union authorization cards prior to the election and that Carolina Food had engaged in unfair labor practices for the purpose of eliminating the Union's majority. The Union urged a *Gissel* bargaining order [1] as the appropriate remedy for the violations. In support of its allegation that it enjoyed the support of a majority of bargaining-unit employees prior to the election, the Union submitted to the Board the signed union authorization cards.

As part of its investigation into the Union's charges, the Board issued a subpoena duces tecum and a subpoena ad testificandum to Carolina Food seeking, inter alia, payroll records for the period of March 7, 1994 through August 25, 1994 showing the names of all bargaining-unit employees, their dates of hire or termination if hired, terminated, or both during the relevant period, and a copy of each identified employee's W–4 and/or I–9 form. The Board sought this information, in part, for the purpose of verifying employees' signatures on the union authorization cards.

Carolina Food refused to comply with the subpoenas, instead petitioning the Board to revoke them. The Board denied the petition for revocation and, in light of Carolina Food's continued refusal to produce the subpoenaed documents, sought an order from the district court directing Carolina Food to obey the subpoenas. *See* 29 U.S.C.A. § 161(2) (West 1978). After modifying the subpoena duces tecum to allow Carolina Food to redact extraneous information, the district court entered an order enforcing the subpoenas. Carolina Food now appeals.

## II.

We begin by noting the very limited nature of our review in this case. The district court should enforce the Board's subpoena if the information sought is relevant to an investigation being conducted by the Board and is described with sufficient particularity. *See NLRB v. G.H.R. Energy Corp.,* 707 F.2d 110, 113 (5th Cir.1982); *accord EEOC v. City of Norfolk Police Dep't,* 45 F.3d 80, 82 (4th Cir.1995) (noting that district court's review of administrative subpoena is limited to determining whether the agency is authorized to conduct the investigation, whether the agency "has complied with statutory requirements of due process," and whether the information sought is relevant).[2] We, in turn, review the district court's decision to enforce the subpoena for abuse of discretion; we may reverse the district court's enforcement order "only in the most extraordinary of circumstances." *G.H.R. Energy Corp.,* 707 F.2d at 113 (footnote omitted).

---

**1.** *See NLRB v. Gissel Packing Co. ,* 395 U.S. 575, 610, 89 S.Ct. 1918, 1938, 23 L.Ed.2d 547 (1969) (holding that an order requiring an employer to bargain with a union is an appropriate remedy for unfair labor practices that have undermined the union's majority).

**2.** Decisional law relating to administrative subpoenas issued by the EEOC is instructive because both the EEOC and the Board derive their power to issue subpoenas from 29 U.S.C.A. § 161. *See EEOC v. Maryland Cup Corp.,* 785 F.2d 471, 476 n. 3 (4th Cir.) (noting that Title VII incorporates 29 U.S.C.A. § 161), *cert. denied,* 479 U.S. 815, 107 S.Ct. 68, 93 L.Ed.2d 26 (1986).

With these principles in mind, we turn to an examination of the Board's subpoena power. Section 161 of Title 29 provides in pertinent part:

For the purpose of all hearings and investigations, which, in the opinion of the Board, are necessary and proper for the exercise of the powers vested in it by sections 159 and 160 of this title—

(1) The Board, or its duly authorized agents or agencies, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to any matter under investigation or in question. The Board, or any member thereof, shall upon application of any party to such proceedings, forthwith issue to such party subpenas [sic] requiring the attendance and testimony of witnesses or the production of any evidence in such proceeding or investigation requested in such application. . . . Any member of the Board, or any agent or agency designated by the Board for such purposes, may administer oaths and affirmations, examine witnesses, and receive evidence. Such attendance of witnesses and the production of such evidence may be required from any place in the United States or any Territory or possession thereof, at any designated place of hearing.

We have previously noted that, in issuing a subpoena pursuant to § 161(1), the Board's powers are "analogous to [those of] the Grand Jury. Its power to subpoena is limited only by the requirement that the information sought must be relevant to the inquiry." *Link v. NLRB,* 330 F.2d 437, 440 (4th Cir. 1964) (internal quotation marks omitted).

Carolina Food does not dispute that the information sought by the Board is relevant to the Board's investigation and acknowledges that it must eventually turn over the subpoenaed documents. Carolina Food asserts, however, that the subpoenas are unenforceable for four reasons: (1) the Board has not provided for a hearing for the production of the subpoenaed documents, as it is required to do by 29 U.S.C.A. § 161(1); (2) the subpoenas were issued not for legitimate in-

vestigatory purposes, but rather as a means of conducting pretrial discovery; (3) the subpoenas were issued in violation of Carolina Food's right to procedural and substantive due process; and (4) the subpoenas are impermissibly vague, overbroad, and unduly burdensome. We address these challenges in turn.

### A.

Carolina Food first asserts that the subpoenas are unenforceable because the Board did not provide for a hearing for the return of the subpoenaed documents. As support for this proposition, Carolina Food relies on the final sentence of § 161(1), providing that the Board "may . . . require[ ]" the production of evidence "at any designated place of hearing," and Judge Major's dissenting opinion in *NLRB v. Barrett Co.,* 120 F.2d 583, 587 (7th Cir.1941), arguing that the Board does not have the authority to conduct an investigation without first issuing a complaint and scheduling a hearing. Judge Major noted that the Board's power to issue subpoenas under § 161(1) is expressly limited to the powers granted to the Board in 29 U.S.C.A. §§ 159, 160 (West 1973 & Supp. 1995), and he reasoned that the Board could not conduct an investigation without first scheduling a hearing because § 159(c) provides that "[i]n any such investigation, the Board shall provide for an appropriate hearing upon due notice." *See Barrett Co.,* 120 F.2d at 587 (Major, J., dissenting) (internal quotation marks omitted). Judge Major further argued that the hearing requirement found in § 159(c) was bolstered by the final sentence of § 161(1). *Id.*

We decline Carolina Food's invitation to accept Judge Major's reasoning. First, Judge Major relied on a version of § 159(c) that has since been amended. That section now provides that "the Board shall investigate . . . [a] petition [alleging unfair labor practices] *and if it has reasonable cause to believe* that a question of representation affecting interstate commerce exists shall provide for an appropriate hearing upon due notice." 29 U.S.C.A. § 159(c)(1) (emphasis added). Thus, the plain language of the statute now empowers the Board to investigate

charges before scheduling a hearing. Moreover, it is the settled law of this circuit that the Board's power to issue investigatory subpoenas does not depend upon the filing of a complaint. *See Link,* 330 F.2d at 439 ("[T]he Board may utilize the investigatory subpoena power against parties to an unfair labor practices charge in aid of precomplaint investigations.") (footnote omitted). Accordingly, we conclude that the Board's failure to schedule a hearing for the return of the subpoenaed documents does not render the subpoenas unenforceable.

We are also unpersuaded by Carolina Food's argument that the language of § 161(1), standing alone, requires the Board to provide a hearing for the production of subpoenaed documents. Section 161(1) provides that the Board "may" provide for the return of subpoenaed documents "at any designated place of hearing." 29 U.S.C.A. § 161(1). Carolina Food's protestations to the contrary notwithstanding, the permissive language of § 161(1) simply does not impose a requirement that the Board provide a hearing for the return of subpoenaed documents.

## B.

■ Carolina Food next asserts that the Board issued the subpoenas not for legitimate investigatory purposes, but rather as a means of pretrial discovery. We agree with the Fifth Circuit that this contention is "frivolous. Section [161(1)] clearly provides that the Board shall have access to employer records 'at all reasonable times,' whether the records belong to one merely 'being investigated' or to one already 'proceeded against.'" *G.H.R. Energy Corp.,* 707 F.2d at 114 (quoting 29 U.S.C.A. § 161(1)). Accordingly, we reject this argument.

## C.

Carolina Food also maintains that the subpoenas violate its right to procedural and substantive due process. We note, however, that Carolina Food seems primarily concerned with the Board's refusal to provide Carolina Food with copies of the signed union authorization cards in exchange for Carolina Food's providing the subpoenaed documents. That is, Carolina Food appears to be

arguing not that the issuance of the subpoenas violated its right to procedural due process, but rather that the Board's refusal to supply copies of the union authorization cards violates Carolina Food's right to substantive due process. We need not determine which of these possible contentions Carolina Food is actually advancing, however, because both are meritless.

■ First, assuming that Carolina Food is challenging the issuance of the subpoenas on procedural due process grounds, we find this challenge to be without merit. We have previously held that the statutory mechanism for appealing the Board's issuance of subpoenas—namely, that the employer may petition the Board to revoke the subpoena—satisfies the requirements of due process. *See EEOC v. Maryland Cup Corp.,* 785 F.2d 471, 476 (4th Cir.), *cert. denied,* 479 U.S. 815, 107 S.Ct. 68, 93 L.Ed.2d 26 (1986). Carolina Food availed itself of this internal review mechanism; the Board's mere refusal to revoke the subpoenas does not constitute a denial of due process.

■ Second, Carolina Food asserts that the Board's current refusal to provide copies of the authorization cards hinders Carolina Food's ability to contest the authenticity of the cards at trial, because it will not be provided adequate time before or during trial to have the signatures on the cards analyzed by a handwriting expert. In addressing Carolina Food's substantive due process challenge, we find persuasive the reasoning of the Sixth Circuit in a nearly identical case. *See NLRB v. Martins Ferry Hosp. Ass'n.,* 649 F.2d 445, 449 (6th Cir.), *cert. denied,* 454 U.S. 1083, 102 S.Ct. 638, 70 L.Ed.2d 617 (1981). In *Martins Ferry,* the Sixth Circuit rejected the employer's claim that the Board's refusal to provide the employer with signed union authorization cards during the course of the Board's investigation violated the employer's right to substantive due process:

> The Hospital contends that the district court failed to protect the Hospital's fifth amendment right to substantive due process by permitting the Board to engage in pre-trial discovery while denying the Hos-

pital equal discovery. We hold this contention to be without merit.

If the current investigation conducted by the General Counsel should result in the filing of a complaint, the Hospital will be entitled to a due process hearing, including an opportunity to compare signatures on authorization cards with signatures on the W–4 forms, and to introduce evidence in opposition to any effort on the part of the General Counsel to obtain a *Gissel* bargaining order. Any failure on the part of the Board to conduct a due process hearing can be challenged in proceedings before the Board and, if necessary, by petition to review filed in this court.

*Id.* at 449 (citation omitted). Here, as in *Martins Ferry*, Carolina Food's substantive due process challenge amounts to a request that we remedy a due process violation that has not yet occurred, and which may never come to pass, simply on the strength of Carolina Food's assertion that the violation might occur. This we decline to do, for this court is not in the business of righting speculative wrongs. Moreover, as represented by the Board, this court has no reason to doubt that the ALJ will give Carolina Food an adequate and meaningful opportunity to examine the union authorization cards when they are presented to it.

### D.

Finally, Carolina Food challenges the subpoenas as impermissibly vague, overbroad, and unduly burdensome. We reject each of these challenges.

■ Carolina Food argues that the subpoena duces tecum is impermissibly vague because, although it requests payroll documents, W–4s, and I–9s for "all bargaining unit employees," (J.A. at 19,) the relevant bargaining unit is not defined. Carolina Food asserts that the stipulated election agreement—defining the bargaining unit as "[a]ll production and maintenance employees" (J.A. at 6)—does not adequately identify the bargaining unit because it does not specify whether quality-control employees are within the bargaining unit. However, the Union's request for recognition, mailed to Carolina Food prior to the election, clearly

excludes quality-control employees from the bargaining unit. Thus, Carolina Food's assertion that it has no idea who is in the bargaining unit is unfounded.

■ Carolina Food also maintains that the request for W–4s and I–9s is overbroad in that the forms would provide the Board with much more information than is strictly necessary to verify the signatures on the union authorization cards. Carolina Food acknowledges, however, that the district court's order granting enforcement of the subpoenas permits Carolina Food to redact extraneous information from the forms. To the extent that the subpoena duces tecum was overbroad, the modification by the district court cured the problem.

■ Carolina Food also claims that the subpoena is unduly burdensome in that it will require the production of up to 4,000 documents without reimbursement of copying costs. In this circuit, "[t]he burden of proving that an administrative subpoena is unduly burdensome is not easily met. The party subject to the subpoena must show that producing the documents would seriously disrupt its normal business operations." *Maryland Cup Corp.*, 785 F.2d at 477 (citation omitted). Rather than arguing that its normal business operations will be interrupted by compliance with the subpoena, Carolina Food complains that the subpoena "impose[s] an undue financial burden on the employer because [it] call[s] for the production of 3,000 to 4,000 copies, for which the Board has not provided any assurance that it will pay." (Appellant's Brief at 22.) However, 29 U.S.C.A. § 161 does not require reimbursement for the costs of complying with the subpoena unless the employer first shows compliance would be unduly burdensome, *Maryland Cup Corp.*, 785 F.2d at 477, and a subpoena is not unduly burdensome merely because it requires the production of a large number of documents:

> The mere fact that compliance with the subpoenas may require the production of thousands of documents is ... insufficient to establish burdensomeness.... "The mere size of [the employer's] operation is no excuse for its refusal to give informa-

tion relative to possible unfair labor practices. It is presumed, by the very fact that [the employer] has such a large number of employees, that it is sufficiently equipped to handle the records of its employees."

*G.H.R. Energy Corp.*, 707 F.2d at 114 (quoting *NLRB v. United Aircraft Corp.*, 200 F.Supp. 48, 51 (D.Conn.1961), *aff'd*, 300 F.2d 442 (2d Cir.1962)); *see also Maryland Cup Corp.*, 785 F.2d at 477 ("Maryland Cup next argues that the subpoena is burdensome in that it demands 'a potentially unlimited number of documents.' We find, however, that the EEOC is entitled to all documents relevant to the charge."). We conclude that Carolina Food has not met its burden of proving that the subpoena duces tecum as modified is unduly burdensome.

### III.

In sum, we conclude that all of Carolina Food's challenges to the subpoenas are without merit. Accordingly, we affirm the district court's order enforcing the subpoenas as modified.

*AFFIRMED.*