**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**NATIONAL CITY BANK, Defendant.**

**No. M86–114.**

United States District Court,
N.D. Ohio, E.D.

July 23, 1987.

Peter S. Levine, Johnny J. Butler, Philip B. Sklover, Robert S. Bauders, Lawrence Mays, E.E.O.C., Cleveland Dist. Office, Cleveland, Ohio, for plaintiff.

James A. Rydzel, James C. Sennett, Jones, Day, Reavis & Pogue, Cleveland, Ohio, for defendant.

## MEMORANDUM OF OPINION

MANOS, District Judge.

On December 4, 1986, the Equal Employment Opportunity Commission ("EEOC"), plaintiff, filed the above-captioned case against the National City Bank ("NCB"), defendant. The EEOC seeks enforcement of a subpoena *ad testificandum* and *duces tecum* with which NCB has not complied. For the following reasons, the application is denied, and the case is dismissed.

### I.

This case relates to a previous investigation of NCB: *National City Bank of Cleveland*, Case No. 80–OFCCP (Dept. of Labor filed May 20, 1980). The history of that case is important to the resolution of this one. Both involve charges of discrimination in employment; both were made by Cleveland Women Working ("CWW"), an organization that purported to represent past, present, and future employees of NCB.

In 1978, CWW complained about employment discrimination to the Office of Federal Contract Compliance Programs of the United States Department of Labor ("OFCCP"). For six (6) months thereafter, the OFCCP conducted an "on-site review" of the employment practices of NCB; it examined personnel records and interviewed witnesses. Aff. of James H. Rydzel, ¶ 4. On May 20, 1979, the OFCCP filed an administrative complaint charging NCB with using discriminatory employment practices from 1967 onward. CWW intervened as a plaintiff and participated in discovery. *National City Bank*, Case No. 80–OFCCP–31, slip op. at 8–9 (Decision and Order on Voluntary Dismissal March 1, 1982); Aff. of Rydzel, ¶ 4.

On July 20, 1979, CWW filed with the EEOC a charge of discrimination against NCB. It alleged that NCB had a policy of discrimination against women. This charge gives rise to the current case.

The EEOC did not conduct any discovery as to the charge, notwithstanding that discovery went forward in the administrative proceedings. On October 30, 1980, the EEOC requested access to the files of the OFCCP on the administrative proceeding. Letter of Elliott V. Porter, dated Oct. 30, 1980.

On January 23, 1981, in a separate but related development, the EEOC and the OFCCP agreed upon and published a Memorandum of Understanding. A goal was to eliminate duplication "among the operations, functions and jurisdictions" of the agencies. Pursuant to the Memorandum, the OFCCP was to make available any document in its possession to the EEOC. ¶ 1. The Memorandum directed the EEOC and OFCCP to establish procedures for "[c]ontact by each agency at the commencement of and during a field investigation or com-

pliance review where appropriate to obtain information in the possession of the agency on the employer being investigated." ¶ 6(b). Lastly, it declared that the "OFCCP shall normally retain, investigate and resolve all complaints of a systematic or class nature which it receives. However, in appropriate cases the EEOC may request that it be referred complaints *so as to avoid duplication* and assure effective law enforcement." ¶ 7 (emphasis added). At the time of publication of the 1981 Memorandum, the agencies also published the following notice:

> Given the difference in the responsibilities of the two agencies there is virtually no way in which EEOC and OFCCP can absolutely guarantee that both agencies will never conduct complaint investigation of the same employer.

46 Fed.Reg. 7436 (Friday, January 23, 1981).

In February 1981, the EEOC and the OFCCP applied the January 1981 Memorandum to their concurrently pending charges against NCB. On February 4, 1981, Fran Farmer, the Director of the Office of Interagency Coordination of the EEOC, telephoned James D. Henry, the Associate Solicitor of the Division of Civil Rights of the Department of Labor; "[t]he content of that conversation was in coordination of the pending OFCCP complaint." Reply Brief of the EEOC at 28. On February 5, 1981, Henry confirmed this conversation by letter; it stated:

> [T]he Department of Labor has filed a lawsuit against the bank [NCB] alleging systemic discrimination. EEOC ... has received a number of individual complaints....
>
> .     .     .     .     .
>
> The OFCCP files will be made available to your representative for examination and copying.... The files are in the Office of the Solicitor in our Cleveland Office. The EEOC representative should contact [that office] ... and make arrangement for reviewing the files....

During the administrative proceeding, the OFCCP reviewed more than one million (1,000,000) documents, and more than one

hundred thousand (100,000) were copied. Aff. of Rydzel, ¶ 3. Although the OFCCP had assured the EEOC of access to the files, the EEOC did not attempt to review these documents.

On February 1, 1982, the OFCCP and NCB arrived at a settlement—the Conciliation Agreement—on the charges against NCB. CWW objected. On February 12, 1982, an Administrative Law Judge ("ALJ") heard oral arguments on the settlement and on March 1 rejected the objections of CWW on the grounds that the OFCCP could settle the administrative proceedings without his approval. *National City Bank*, slip op. at 7–8. The ALJ declared:

> What has occured here may be somewhat surprising, but it is certainly not unique in the annals of litigation. After extensive investigation, review of depositions and responses to interrogatories, inspection of thousands of Defendant's personnel records, and analysis of all the available evidence, Plaintiff (OFCCP), on the advice of counsel (the Solicitor), has determined that it is prudent and in the best interests of the Contract Compliance Program to accept the commitments made by Defendant in the conciliation agreement rather than to proceed to hearing. That is a policy decision and as such is not within the purview of administrative adjudication, the primary function of this Office. Accordingly, Intervenor's objections to the terms and conditions of the conciliation agreement may not properly be resolved in this forum.

*Id.* at 8. The ALJ also stated that the settlement would not prejudice the rights of CWW under Title VII. Upon appeal by CWW, the Secretary of Labor affirmed that decision on September 9, 1982. *OFCCP v. National City Bank of Cleveland*, 30 FEP Cases 6 (Dept. of Labor Sept. 9, 1983) (Decision of the Secretary of Labor).

Before the February 12, 1982 hearing but after the legally binding settlement, the EEOC wrote a letter to NCB that it would "commence processing ... [the charge before it] in the near future." Let-

ter of Bruce B. Elfvin, dated February 11, 1982. The EEOC referred to a provision of the Conciliation Agreement which obligated the OFCCP to return to NCB all confidential material. The EEOC requested that NCB retain this confidential material for review but did not seek access to it; counsel for NCB protested to the Office of Interagency Coordination of the EEOC. Letter of James A. Rydzel, dated April 15, 1982. Simultaneously, the EEOC requested from the OFCCP access to this material. The OFCCP refused for two reasons: 1) access would hamper its response to the pending appeal of CWW, and 2) the Conciliation Agreement barred access. Letter of James D. Henry, dated March 1982.

The Conciliation Agreement declared that it resolved ."[a]ll issues raised in ... the Administrative Complaint...." ¶ 2. It recognized that "[d]uring the compliance review and during the course of lengthy and extensive discovery, OFCCP ... had unlimited access to Bank [NCB] files, personnel records and computer tapes." *Id.* The OFCCP stipulated that the "Agreement constitute[d] the maximum limit of any possible liability for the purposes of resolving all Executive Order violations alleged in the Administrative Complaint." ¶ 4. Lastly, the Agreement requires that "[b]ecause of the extensive review conducted by OFCCP of the Bank's [NCB's] policies and practices ... OFCCP will not refer to the Equal Employment Opportunity Commission ... any issue of employment discrimination arising out of the Bank's employment practices and policies resolved by this Agreement, except as may be required by the Memorandum of Understanding dated January 16, 1981 between the OFCCP and the Equal Opportunity Commission." *Id.*, ¶ 14.

On May 18, 1982, a representative of the EEOC wrote to counsel for NCB about counsel's protest. He invoked the 1981 Memorandum of Understanding as authority for the request to the OFCCP and declared that the request was made so that the EEOC would not "duplicate the efforts of the DOL [OFCCP] nor inconvenience NCB by repetitious requests for information." Letter of Bruce B. Elfvin, dated

May 18, 1982. He recognized "the similarities between the OFCCP Complaint and the allegations of the CWW charge pending with this Commission ..." and concluded that he "hope[d] that conciliation with EEOC would be successful and that your client could reach a successful agreement with EEOC administratively." *Id.*

More than one (1) year later, on June 8, 1983, the EEOC made its first request for information. Letter and Questionnaire from Barbara Cheich, dated June 8, 1983. NCB refused to cooperate. Letter of James A. Rydzel, dated July 8, 1983. On July 28, 1983, the EEOC served the subpoena *ad testificandum* and *duces tecum* on NCB, requesting the same information as before. It encompasses the employment practices of NCB from September 1977 to 1983 on recruiting and screening applicants, hiring and placing new employees, and training, compensating, promoting, disciplining, and discharging employees.

One (1) month later, on August 26, 1983, NCB promptly invoked the administrative procedures of the EEOC to revoke the subpoena. After seven (7) months, the EEOC upheld the validity of the subpoena at the first level of these procedures. One (1) month later, on April 23, 1984, NCB promptly appealed this decision; *after one (1) year and nine (9) months,* on February 12, 1986, the EEOC upheld its validity at the second level. At each level, NCB argued that the EEOC improperly delayed its investigation and the late commencement of it prejudices NCB and violates public policy. NCB, however, complied partially with the subpoena.

On December 4, 1986, the EEOC filed this case; it has ostensibly narrowed the information sought by the subpoena but continues to demand information on recruiting and processing applicants, hiring and placing new employees, and compensating and promoting employees. NCB has responded by showing that the doctrine of laches bars enforcement. In support of the defense of laches, NCB has demonstrated by affidavits and argument that the delays of the EEOC in investigating and in ruling on the challenge to the subpoena have

caused prejudice because 1) the investigation is wasteful and duplicates the investigation of the OFCCP; 2) compliance with the broad scope of the subpoena would require an inordinate amount of human labor—for instance requiring NCB to sort through personnel files for all past and present employees, to identify files of approximately three thousand two hundred (3,200) employees, and to extract particular information from each; 3) NCB has been harmed in its ability to convey to the EEOC that the investigation is meritless; and 4) it has been exposed to potentially greater back pay awards.

## II.

Neither party has requested an evidentiary hearing. NCB argues that the EEOC unreasonably delayed investigating the charge of CWW and enforcing the subpoena and that it was prejudiced by reason thereof. If this is so, then NCB is entitled to an order denying enforcement of the subpoena. *Equal Employment Opportunity Commission v. Bethlehem Steel Corp.*, 765 F.2d 427, 430 (4th Cir.1985).

### A.

The EEOC unreasonably delayed investigating the charge; indeed, there are two (2) periods of unreasonable delay. First, from July 20, 1979 until June 8, 1983, the EEOC took no action to acquire information from NCB. Second, from August 26, 1983 to February 12, 1986, the EEOC unduly delayed ruling on the administrative petition challenging the validity of the subpoena.

### 1.

■ The unimpeded opportunity to investigate and public policy demonstrate and establish that the first period of delay was unreasonable. Upon the filing of the charge, the EEOC had the power to investigate and subpoena information. *It did not and there is nothing in the record to show why it did not.* Moreover, after communication with the OFCCP in October 1980 and February 1981, the OFCCP agreed to give the EEOC access to the files on the administrative proceeding; the

EEOC did not seek this access until after the settlement. By then it was too late. The settlement barred the OFCCP from providing access, and access would have hampered the ability of the OFCCP to defend against the appeal of CWW. On February 11, 1982, the EEOC requested that NCB retain the very material to which the OFCCP had assured it access but which it had never inspected. Indeed, after requesting that NCB retain this material, the EEOC never sought to inspect it, rather, on June 8, 1983, over one (1) year later, it demanded information as to all aspects of the employment practices of NCB for over a five (5) year period. Thus, from July 20, 1979 until June 8, 1983, the EEOC had a reasonable opportunity to investigate the charge but did not. From February 5, 1981 until the OFCCP and NCB arrived at the Conciliation Agreement on February 1, 1982, it had more than a reasonable opportunity to investigate but did not.

Public policy emphasizes the unreasonableness of this inaction. The 1981 Memorandum between the OFCCP and the EEOC allocated responsibility for the investigation of employment discrimination. Under it, the OFCCP was to investigate claims of systematic discrimination, and the EEOC was to investigate claims of individual discrimination. As the notice accompanying the 1981 Memorandum declares, there may be circumstances during which the agencies will engage in duplicative investigations; read in context of the 1981 Memorandum, the notice addresses circumstances during which the EEOC processes an individual's charge during the pendency of an investigation by the OFCCP because delay would harm the individual's claim. Nonetheless, the EEOC contends that the notice applies because this is a case in which a claimant has filed charges of systematic discrimination with both the OFCCP and the EEOC, and because the EEOC "has been unable to review the data provided by the Bank" to the OFCCP. Response Brief of the EEOC at 27. This reading of the notice is equivalent to interpreting it as allocating responsibility for initial review of claims of systematic dis-

crimination to the OFCCP and responsibility for a plenary review of the efforts of the OFCCP by the EEOC when and if the EEOC chooses to do so. Reading the notice in this way would emasculate the 1981 Memorandum. Accordingly, NCB has demonstrated that this delay was unreasonable, and the burden shifts to the EEOC to demonstrate some explanation for its inaction.

The EEOC makes two (2) arguments on the reasonableness of its inaction. First, it says:

> The alternative was for the Commission to demand from the Bank during the OFCCP investigation the very same documents the Bank was providing to OFCCP. Had the Commission chosen this alternative, and demanded from the Bank the very documents being shared with OFCCP, the Bank no doubt would have objected to having to engage in discovery with two different agencies.

> The Commission followed the most sensible alternative available. It held its own investigation in abeyance pending completion of the OFCCP proceedings. The Commission planned at that time to assess whether the alleged violations of Title VII, the statute it is obliged to enforce, were remedied by the relief attained by OFCCP. The Commission thus made plans with OFCCP to review the documents received from the Bank after the termination of OFCCP's proceedings. The Commission hoped to be able to conduct its investigation without requiring the provision of any additional documents from the Bank. In this way, the Commission would not have to duplicate the discovery efforts of OFCCP. The Commission's decision not to act on CWW's charge from July, 1979 to February, 1982 was thus sensible and fair to all parties, including the Bank.

Nothing in the record supports this argument, and common sense undermines it.

If the EEOC had attempted to investigate concurrently with but separately from the OFCCP, most likely NCB would have objected because the actions of the EEOC would not have been sensible; however, if as the EEOC contends it planned from the beginning to duplicate the investigation of the OFCCP, it would have been *more* sensible, or more correctly less unreasonable, to have done so while the OFCCP was investigating, rather than wait for the OFCCP to finish investigating and then to begin its own. Simultaneous investigation would have allowed coordination among the EEOC, the OFCCP, and NCB and could have minimized duplication. Lastly, the most sensible approach for the EEOC would have been to maintain contact with the OFCCP during its investigation and to coordinate with that agency. The 1981 Memorandum of Understanding and the February 1981 agreement between the EEOC and the OFCCP demonstrate that this option was available. Yet, because the EEOC did not monitor the discovery of the OFCCP, it now seeks information that does duplicate the discovery efforts of the OFCCP. Thus with this first argument, the EEOC has not come forward with a plausible explanation.

In its second argument, the EEOC contends that because the Conciliation Agreement could not have a preclusive effect on CWW under Title VII, NCB is estopped from raising the Conciliation Agreement as a defense. This argument is without merit. There is no issue in this case of res judicata and collateral estoppel; *moreover, the rights of CWW are not "rights" of the EEOC.*

### 2.

■ As to the second delay, on its face it is unreasonable. The EEOC attributes the delay to NCB because NCB petitioned to revoke the subpoena. However, before, during and now after the administrative appeal process, NCB has promptly and consistently made its position known to the EEOC. NCB has argued that investigation by the EEOC is untimely and prejudicial. Any delay in the administrative appeal process arose out of the delay of the EEOC in ruling on the petition and not out of the actions of NCB in filing it. For instance, on April 23, 1984, NCB filed an appeal to the General Counsel of the EEOC; it did not raise new or novel issues. *More than*

*one and one-half (1½) years later,* on February 12, 1986, the General Counsel denied the appeal. The EEOC offers no explanation for its delay in ruling other than to blame NCB for using the administrative process. The delay is attributable to the EEOC and is unreasonable.

Accordingly, the delay from the filing of the charge on July 20, 1979 to the first request for information on June 8, 1983 was inexcusable; additionally the delay from the petition of NCB on August 23, 1983 until a final ruling on its administrative appeals on February 12, 1986 was unreasonable.

### B.

NCB has shown that both delays prejudiced it. It has demonstrated that the discovery by the OFCCP was burdensome and that the discovery now sought by the EEOC will be duplicative. As an example, it has demonstrated that one request of the EEOC will require it to review the employment files of all past and present employees, to identify approximately three thousand two hundred (3,200) of them, and to extract specific information from the files about them. If uncontradicted, NCB establishes prejudice. Additionally, NCB has demonstrated that the delay has harmed its ability to defend itself and has exposed it to greater liability.

### 1.

In response, the EEOC argues that its investigation is necessary, that it is not duplicative, and that it is not wasteful. On the issue of necessity, the EEOC argues that because the Conciliation Agreement did not provide back pay for members of CWW, the EEOC must investigate. Also, the EEOC charges that because the Conciliation Agreement did not redress discrimination in placement after hiring, it must investigate this as well. On the issue of being duplicative, the EEOC argues that because the Conciliation Agreement did not address the issues of back pay and placement, investigation by the EEOC will not duplicate the work of the OFCCP. On the issue of wastefulness, the EEOC argues that NCB will have "little additional expense" because to comply it only has to turn over the documents that the OFCCP returned to it. These arguments are without merit.

First, the investigation is unnecessary. To the extent class-based back pay is contemplated, that remedy was available to the OFCCP and after extensive discovery it chose not to demand it. Moreover, as to placement after hiring, that charge was part of the administrative complaint of the OFCCP and of its discovery; it chose also not to demand relief for it. Rather, as to both of these issues, the Conciliation Agreement provided: "All issues raised in ... the Administrative Complaint have been resolved.... OFCCP agrees that ... this Agreement constitute[s] the maximum limit of any possible liability for the purposes of resolving all Executive Order violations alleged in the Administrative Complaint." ¶¶ 3, 4.

Second, the investigation is duplicative. The OFCCP charged and investigated whether NCB discriminated in all aspects of its employment practices from 1967 until the filing of the complaint in 1980; the Conciliation Agreement protected against such discrimination well into 1983. Administrative Complaint, ¶ 9; Conciliation Agreement, ¶¶ 14, 15. The EEOC seeks to investigate discrimination in employment practices of NCB from 1979 to 1983. Although it has narrowed the scope of the information requested in the subpoena, it still demands information on all aspects of the employment practices of NCB for these years. It is irrelevant that the EEOC intends relief only for that for which the Conciliation Agreement did not provide. The proposed investigation of the EEOC is identical to and duplicative of the investigation conducted by the OFCCP.

Finally, the EEOC argues its investigation bears no cost. It says that NCB need allow inspection only of documents previously returned.

The argument of the EEOC is without merit. First, the documents were available to the EEOC during the previous investigation by the OFCCP; the EEOC unreasonably and inexcusably delayed in the review

of them. The cost and inconvenience of making them available to the EEOC now constitutes a hardship and is prejudicial. Second, the EEOC never requested access to these documents from NCB. Third, the subpoena seeks information of a wide variety which will be expensive to assemble. There is no evidence that by allowing inspection of the documents, NCB would comply with the subpoena. Fourth, by affidavit uncontested, NCB has demonstrated that one (1) of the many interrogatories propounded as part of the subpoena alone will entail significant costs. Thus, the unsupported assertion of the EEOC, that there are no costs, does not bear scrutiny.

### 2.

NCB has demonstrated that the delay in enforcing the subpoena has harmed it in that 1) it is less able now to demonstrate the lawfulness of its actions and the meritless nature of the EEOC investigation, and 2) it is exposed to greater potential liability. Aff. of John E. Culver, ¶¶ 3–5. The EEOC responds by characterizing these harms as 1) a concern for the administrative burden of compliance, and 2) a type of prejudice cognizable only if the EEOC filed a case charging the NCB with discrimination.

First, in light of the duplicative and broad nature of the subpoena, the harm to the ability of NCB to demonstrate the lawfulness of its actions and the meritless nature of the investigation is prejudicial. This prejudice is demonstrated further by the stated resolve of the EEOC to achieve some result from its investigation. For instance, on May 18, 1982, the Regional Attorney for the EEOC wrote to counsel for NCB: "It is my hope that conciliation with EEOC would be successful and that your client could reach a successful agreement with EEOC administratively." Moreover, the EEOC has justified its duplicative investigation because of "deficiencies" in the Conciliation Agreement. The delay has damaged the ability of NCB to convey to the EEOC that such a result is unwarranted. By uncontested affidavit, it has shown 1) the diffuse nature in terms of people and

geography of its hiring and placement decisions, 2) the rapid turnover of people involved in those decisions, and 3) its inability to reconstruct now the facts surrounding such decisions before 1984. Aff. of John E. Culver, ¶¶ 3–5.

Second, the delay has increased one potential result that the EEOC seeks—back pay. Although this harm could be ameliorated after a case would be filed against NCB, there is no reason that it may not be considered now. The arguments of the EEOC show that because of the Conciliation Agreement back pay is the primary relief that it will seek. As discussed above, the delay of the EEOC has harmed the ability of NCB to properly challenge the investigation; that same delay undoubtedly exposes NCB potentially to a more damaging result. Investigation under these circumstances is unfair and prejudicial. Accordingly, the delay before issuance of the subpoena together with the delay in enforcing it have prejudiced NCB.

### III.

Accordingly, for the above-stated reasons, the application of the EEOC for enforcement of its subpoena is denied because of laches.[1]

IT IS SO ORDERED.

---

1. This Memorandum of Opinion does not address nor resolve whether the EEOC charge of CWW is valid, nor does it address or resolve whether the subpoena is overly broad.