208 A.2d 110.

CENTRAL SOYA COMPANY, INC. *vs.* EVELYN K. HENDERSON *et al.*

MARCH 16, 1965.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

ROBERTS, J. This action in assumpsit was brought to recover from the defendants, as guarantors, a portion of the indebtedness of the principal debtor. The matter was tried to a justice of the superior court sitting with a jury, who denied the plaintiff's motion for a directed verdict. The jury then returned a verdict for the plaintiff in the amount of $15,000. The trial justice thereafter denied the defendants' motion for a new trial and denied the plaintiff's motion for the entry of judgment notwithstanding the verdict but granted its alternate motion for a new trial on the question of damages subject to the defendants' consent to an additur. The plaintiff and the defendants are now in this court prosecuting their respective bills of exceptions.

The record discloses that for some time prior to 1960 defendants were engaged in raising poultry for market, the business being incorporated as Shore Road Live Poultry Company, hereinafter referred to as Shore Road. It further appears that in the conduct of that business they occasionally purchased feed from C. Fred Lincoln, hereinafter referred to as Lincoln, who conducted a grain business in Mystic, Connecticut. The defendants concede that in August 1960 they executed an agreement in writing which on its face purports to guarantee the payment to plaintiff, a manufacturer of poultry feeds, of the indebtedness of Lincoln up to the amount of $30,000.

At the opening of trial defendants were granted permis-

sion to plead specially to the declaration out of time. The special plea alleged, in substance, that defendants executed the instant agreement pursuant to an understanding that they were guaranteeing the indebtedness of Shore Road; that at the time of such execution the identity of the principal debtor had not been set out in the instrument; that when plaintiff came into possession of the instrument it wrongfully inserted the name of Lincoln as the principal debtor; and that defendants did not become aware of this substitution of the principal debtor until after April 5, 1963. The defendants thus put into issue the question whether they had, in executing the instrument, intended to become liable for the indebtedness of Lincoln in the amount stated therein.

To prove the amount of indebtedness of Lincoln, plaintiff put into evidence thirty-seven trade acceptances, so called, each of which on its face disclosed acceptance by Lincoln. Each such trade acceptance appears to be payable ninety days after its date of execution and, excepting the first in chronological order, bears no indicia of payment, demand or dishonor. The one acceptance referred to above has on its face a penciled notation which, according to subsequent testimony, reflects a credit for part payment thereof. This testimony was also to the effect that whenever payments were made on the Lincoln account, they would be credited to the oldest outstanding trade acceptance.

Evidence to establish the amount of the principal indebtedness was adduced through Charles F. Sullivan, who testified that he was employed by plaintiff as a credit manager, in which capacity he supervised accounts of plaintiff's customers in the eastern division, so called. He testified further that he was familiar with the credit rating and condition of all accounts under his supervision and that all of the trade acceptances put into evidence remained unpaid. Refreshing his recollection by reference to a summary of

the items contained in the Lincoln account, he testified that the total amount of the indebtedness was $64,065.08 and that no payments had been made by defendants on the principal indebtedness.

The defendants argue that it was error to admit the trade acceptances into evidence in that it violated the best evidence rule. They contend that the amount of the principal indebtedness to which the guarantee applies ought to be proved by plaintiff's books of account wherein would be disclosed evidence of payments as well as the balance due thereon. The pertinence of the best evidence rule frequently depends upon the posture in which the claim of the plaintiff is presented. In cases for the enforcement of guarantee contracts, it is the obligation of the plaintiff to establish clearly the amount of the principal indebtedness to which it contends the guarantee has application.

Because we take the view that these trade acceptances were the original records of the indebtedness alleged to be guaranteed by defendants, their admission did not violate the best evidence rule. The situation here is not identical with that in *Edward Wilkinson & Co. v. Universal Safety Ash Tray Co.*, R. I., 133 Atl. 658. The evidence proffered in that case consisted of time sheets, the content of which was data copied from time cards of employees. In this case the trade acceptances reasonably may be equated with the missing time cards in that case.

During cross-examination the witness Sullivan disclosed that he had corresponded with defendants and that he had in his possession at his motel records of plaintiff's dealings in pertinent matters. He testified further that plaintiff employed J. Mark Rieser as a salesman, who in the eastern division engaged in promotional work among poultry raisers in behalf of plaintiff's product. After plaintiff rested, on defendants' motion a subpoena duces tecum issued requiring plaintiff to produce certain correspondence, the petition for

the subpoena specifying four classes of correspondence sought. The subpoena was quashed on the motion of plaintiff. The defendants summoned Rieser, and during his examination the court sustained numerous objections to the introduction of correspondence and to allegedly leading questions put to Rieser by defendants. The defendants now prosecute exceptions to the rulings of the court which precluded such interrogation of Rieser by way of leading questions and to the ruling of the court quashing the subpoena duces tecum in its entirety.

The defendants sought to introduce two letters sent them by Rieser which, on plaintiff's objection, were excluded. The first of these was dated May 20, 1961 and was marked as defendants' exhibit B for identification. Therein Rieser stated: "We will instruct our Harrisburg office to carry Thomas A. Henderson III, T. A. Shore Road Poultry Co., as a commercial account. * * * We will issue you weekly quotations on our Rooster and Broiler feeds, and we will bill you from signed delivery receipts furnished to us by the Lincoln Grain Co., Mystic, Conn. It will be your responsibility to be certain you receive what you sign for on the delivery receipt. So, be certain to have your farmers check these deliveries. You will also be billed on the price sheet in effect on the date you receive the feed. If there should be any errors in the billing of this feed, kindly notify me at once, and I will see that the error is corrected. * * * We will maintain monthly tonnage records on your entire account. This will cover shipments to your own farms, as well as customers you may secure for us. As a commercial acct., you will receive monthly payments, on this combined tonnage, of $2.00 per ton. As a commercial acct., you will also enjoy dealer privileges of booking feed requirements when we feel it will be advantageous to you. An adequate line of credit has been established for you,

but we will, from time to time, ask you for new financial statements."

The second letter, dated August 4, 1962, signed by Mr. Rieser, and addressed to Thomas A. Henderson III, was marked for identification as defendants' exhibit C. It reads, in part: "Dear Tom: Last week our accountants audited the Books of Lincoln Grain Store. They found a Balance due, on your account, of $3811.69. We would appreciate if you would forward your check to Lincoln in this amount. After he has notified us that he has received your check, we will then return to you the Personal Guarantee of you & your Mother. We must have this settlement no later than Aug. 31st, 1962. If we do not receive payment by that time, we will have to invoke the personal guarantee which we hold." These letters were excluded from evidence, and the record discloses that objections of plaintiff to inquiries by defendants as to their contents were repeatedly sustained.

In *Palma* v. *Notarianni*, 52 R. I. 61, this court held that to enforce an alleged contract of guarantee, it must be shown that, in executing the agreement, the party charged with such obligation intended to become liable for the debt of the principal debtor. In the instant case, as we have noted, the special plea raised the issue of whether defendants here intended to become primarily liable for the indebtedness of Lincoln or only for the indebtedness of their own corporation, Shore Road. In *DiFonzo* v. *Notarianni*, 61 R. I. 287, the plaintiff contended that the defendants had become liable for the debt of another when they signed an instrument beneath the word "garanti" which, translated from Italian to English, means "guarantors." The defendants contended, however, that the word "garanti" had been inserted in the instrument after they had signed it and that they executed the instrument with no intention of making any agreement of guarantee. This court went on to say:

"We are of the opinion that the plaintiff's contention cannot be sustained upon the evidence. Whatever the instrument or obligation may be termed, the facts in evidence fail to support a finding that the two defendants Saccoccio and Frank Notarianni intended and agreed to create and to be bound by such an obligation of 'absolute guaranty' as the plaintiff contends."

We are constrained to conclude that it was prejudicial error on the part of the court to exclude the Rieser letters marked for identification as defendants' exhibits B and C. An examination of the contents thereof is persuasive that they are material and relevant upon the issue of defendants' intent to assume liability for the indebtedness of Lincoln as well as on the issue of the amount of the principal indebtedness were the jury to find that the agreement was in fact to guarantee Lincoln's indebtedness. Evidence tending to show that defendants were given the status of a "commercial account" is clearly relevant, in our opinion, on the question of whether the agreement executed by defendants guaranteed the indebtedness of Lincoln or Shore Road and upon the issue as to the amount of the indebtedness guaranteed by defendants. Further, it is obvious that these letters were admissible for the purpose of permitting defendants to lay a foundation for the impeachment of the testimony of Sullivan.

The evidentiary situation in this case appears to us to be analogous in some measure to that which confronted this court in *Cargill* v. *Atwood,* 18 R. I. 303, where the trial court had excluded evidence offered by the defendants to show that certain charges against their testator, contained in the plaintiff's books of account, were in fact notations of credit of payment to the defendants' testator on an antecedent debt owed him by the plaintiff. This court said at page 308: "We think it was error not to allow the defendants to offer proof that such was the agreement and under-

standing of the parties. The general issue in *assumpsit* puts the plaintiff upon proving his whole case, and entitles the defendant, without special notice, to give evidence of anything which shows that the plaintiff ought not to recover." We conclude that the letters excluded in this case were offered for that purpose and that they should have been admitted for the jury's consideration.

The court on plaintiff's motion also quashed in its entirety a subpoena duces tecum which by its terms required plaintiff to produce correspondence dated between April 15, 1960 and June 5, 1963, first, between Mr. Rieser and Central Soya Co.; second, between C. Fred Lincoln and Central Soya Co.; third, between Mr. Henderson of Shore Road Live Poultry and Central Soya Co.; and, fourth, between Mr. Lincoln and Mr. Rieser and Central Soya Co. pertaining to Shore Road Live Poultry and Mr. Henderson. We are persuaded that the first and second requests for the production of such correspondence are so broad in scope and so lacking in definiteness as to have properly been quashed on the motion. We are unable to agree, however, that the subject matter of the third and fourth requests was so lacking in specification or wanting in materiality and relevance that the motion to quash could properly be granted with respect thereto.

We are convinced also that the court erred in quashing the third and fourth clauses of the petition for the subpoena duces tecum. It appears from the transcript that the court, in so acting, found them lacking in certainty, saying, in substance, that to be entitled to such a subpoena, the petition must be sufficiently specific to identify the documents sought and that the subpoena could not be used to search plaintiff's files. It is true that entitlement to such a subpoena requires a showing with reasonable certainty of the particular documents or papers wanted and the materiality thereof to the issues at trial. However, in our opinion, the

396

pertinent clauses of the instant petition meet these requirements to an extent sufficient to have warranted being sustained by the trial judge on the motion to quash.

The power to issue a subpoena duces tecum is inherent in the court, its purpose being to promote the prompt administration of justice and, as we said in *Donatelli Building Co.* v. *Cranston Loan Co.*, 87 R. I. 293, statutory grants of similar authority that require the production of documents are only declaratory of the common law. However, as this court suggested in *General Products Co.* v. *Superior Court*, 81 R. I. 458, when we discussed the statute providing for the examination of documents in the possession of an adverse party, the scope of the demand must be consistent with the needs of the petitioner and that under the statute the petition demanding the production of the documents shall describe the documents or papers "relating to the case with particularity so that the discovery sought will appear to be reasonably warranted." The view to which we subscribe is aptly stated in *State* v. *Cooper*, 2 N. J. 540, where it was said at page 556: "But the subject of a *subpoena duces tecum* must be specified with reasonable certainty, and there must be a substantial showing that they contain evidence relevant and material to the issue. If the specification is so broad and indefinite as to be oppressive and in excess of the demandant's necessities, the subpoena is not sustainable."

The defendants in the pertinent clauses of the instant petition sought the production of the correspondence of specifically named individuals between fixed dates that related specifically to their accounts. We are unable to agree that such requests are so uncertain either as to the identity of the items sought or the time period involved as to burden unduly plaintiff in requiring compliance therewith. The record does not disclose that such correspondence was so voluminous as to burden unreasonably plaintiff in requiring

its production or that plaintiff would be put to any substantial inconvenience or expense in bringing such correspondence into court in compliance with the subpoena.

It is our opinion also that defendants' showing as to the materiality of such correspondence to the issues at trial was sufficient to warrant the granting of said third and fourth clauses. Again, it is our belief that the testimony of Mr. Sullivan concerning the records and the disclosures made in the two Rieser letters warrants a reasonable inference that other correspondence relating to items sought in said clauses of the petition would contain matters relevant to the issues at trial. It is then our opinion that the ruling of the court quashing the third and fourth clauses of the petition for the subpoena duces tecum constituted prejudicial error.

Because we take this view as to the prejudicial character of the error which inheres in the rulings of the court excluding the Rieser letters from evidence and quashing the subpoena duces tecum in its entirety, it is clear that the case must be remitted to the superior court for a new trial. It will not be necessary, therefore, for us to pass upon the other exceptions of the defendants or any of the exceptions of the plaintiff.

The defendants' exception numbered 13 and their exceptions numbered 49 to 93 are sustained, and the case is remitted to the superior court for a new trial.

*Edwards & Angell, Knight Edwards, Ernest N. Agresti, V. Duncan Johnson,* for plaintiff.

*Abedon, Michaelson & Stanzler, Milton Stanzler, Richard A. Skolnik, Alvin N. Biener,* for defendants.