NATIONAL LABOR RELATIONS BOARD, Applicant

v.

CHAMPAGNE DRYWALL, INC., Respondent.

Civil Action No. 06–11352–GAO.

United States District Court, D. Massachusetts.

June 8, 2007.

Emily G. Goldman, National Labor Relations Board, Boston, MA, for Applicant.

A. Isabel DeMoura, Glenn A. Duhl, Siegel, O'Connor, O'Donnell & Beck, P.C., Hartford, CT, for Respondent.

## ORDER

O'TOOLE, District Judge.

Pursuant to the National Labor Relations Act, the National Labor Relations Board ("NLRB") applied for an order enforcing two subpoenas duces tecum[1] served on the respondent as part of the NLRB's investigation of the respondent's alleged practice of refusing to consider and hire qualified job applicants based on their union affiliation. In particular, the subpoenas seek multiple lists of information, including: (1) a list of the respondent's supervisors, managers and officers; (2) a list of all permanent and temporary employees since January 1, 2004; (3) a list of all jobs performed by the respondent, or for which it has used subcontractors, to perform drywall installation/finishing work since January 1, 2005, including the dollar value and duration of each job or subcontract, and the staffing of each job or subcontract, including the number and classifi-

---

1. Subpoena Duces Tecum B–501437 and Subpoena Duces Tecum B–501454.

cations of employees; and (4) a list of any applicants responding to a January 1, 2005 *Boston Globe* advertisement who were contacted by the respondents' representatives by telephone, the dates of such telephone contacts, and any notes of such conversations.

The respondent objects to the NLRB's subpoena requests on the basis that although the data sought exists within the organization, it does not exist in the format sought by the NLRB—namely as a list. Citing 29 U.S.C. § 161(1),[2] which pertains to the NLRB's subpoena power, the respondent argues that because the statute confers upon the NLRB "the right to copy any evidence of any person being investigated," agency's investigatory subpoena power extends only to existing documentary evidence.

Although the First Circuit has not addressed the scope of an agency's subpoena powers, the approach and reasoning of other circuits which have is persuasive. For example, in *E.E.O.C. v. Maryland Cup Corp.*, the Fourth Circuit reasoned that the subpoena power of the EEOC[3] "was not limited to the production of documents already in existence. Rather, the enabling statute grants the EEOC broad authority to require 'the production of *any* evidence.'" 785 F.2d 471, 479 (4th Cir.1986) (emphasis added). In reaching this decision, the *Maryland Cup* court pointed out that the only statutory limitation of the NLRB's subpoena power was that the evidence had to be "under [the recipient's] control." Accordingly, the Fourth Circuit

held that though the information sought may have existed only in unwritten form in the minds of the supervisors and workers, the company was still required to produce the information. *Id.* at 479. Other courts have adopted the analysis of the *Maryland Cup* court. *E.E.O.C. v. Citicorp Diners Club, Inc.*, 985 F.2d 1036, 1039 (10th Cir. 1993); *E.E.O.C. v. Bay Shipbuilding Corp.*, 668 F.2d 304, 313 (7th Cir.1981); *New Orleans Public Service, Inc. v. Brown*, 507 F.2d 160, 164–65 (5th Cir.1975) (pre-dating *Maryland Cup*, yet still concluding that merely requiring the recipient to compile data into a list in response to a subpoena did not render the subpoena invalid).

In line with the reasoning of these cases, I conclude that the subpoenas seeking lists of this information from the respondent are within the NLRB's subpoena power under 29 U.S.C. § 161(1). In the instant case, the respondent concedes that the information, in its raw data form, currently exists in their control. Therefore, the respondent is required to compile that data into the format as requested by the subpoenas. Champagne Drywall's argument that it would be an undue hardship to compile the lists is not persuasive. *See Citicorp Diners Club*, 985 F.2d at 1040 ("A court will not excuse compliance with a subpoena for relevant information simply upon the cry of 'unduly burdensome.' Rather, the employer must show that compliance would unduly disrupt and seriously hinder normal operations of the business."

**2.** The National Labor Relations Act, codified at 29 U.S.C. § 161(1), states:

> The Board, or its duly authorized agents or agencies, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to any matter under investigation or in question. The Board, or any member thereof, shall upon application

of any party to such proceedings, forthwith issue to such party subpenas requiring the attendance and testimony of witnesses or the production of any evidence in such proceedings or investigation requested in such application.

**3.** The subpoena power of the EEOC is equivalent to the subpoena power of the NLRB as both are derived from 29 U.S.C. § 161(1).

(citing *Maryland Cup Corp.*, 785 F.2d at 479)). Not only does Champagne Drywall not detail how compliance would hinder its business, but that prospect seems unlikely. The NLRB only seeks information for a relatively short specified period of time. Furthermore, it seems to be the more sensible approach to require the party with the knowledge and familiarity with the raw data to compile the list. *E.E.O.C. v. Rite Aid Corp.*, No. H–00–2154, 2000 WL 1515200, *3 (D.Md. Oct. 3, 2000) ("The information sought in this case by the EEOC cannot be readily obtained by it if [the respondent] merely supplies numerous documents to the EEOC. [The respondent's] personnel are much more familiar than is the EEOC with the detailed information sought in [the requests].").

■ The respondent also objects to the scope of the subpoenas. Generally, so long as the information sought by a subpoena is relevant to the agency's investigation, and the subpoena is not shown to be unduly burdensome, the subpoena will be enforced. In defining relevance, "the district court defers to 'the agency's appraisal of relevancy, which must be accepted so long as it is not obviously wrong.'" *N.L.R.B. v. American Medical Response, Inc.*, 438 F.3d 188, 193 (2d Cir.2006) (citing *In re McVane*, 44 F.3d 1127, 1136 (2d Cir.1995)). Suggesting a broad concept of relevance, the Supreme Court has stated that "it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *United States v. Morton Salt Co.*, 338 U.S. 632, 652, 70 S.Ct. 357, 94 L.Ed. 401 (1950) (addressing the subpoena power of the FTC). The Court further noted that all an agency "must show [is] that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the admin-istrative steps required by the Code have been followed...." *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964); *see also American Medical Response*, 438 F.3d at 192–93 (referring to both *Morton Salt* and *Powell*).

■ Applying these standards to the requests by the NLRB, I find that the scope of the subpoenas is reasonably relevant to the investigation for the reasons proffered by the NLRB. The thrust of the information relates to whether the respondent subjected union members to disparate treatment because of their union affiliation—the focus of the NLRB's unfair labor practice investigation. The information from 2004 provides a comparative reference to the respondent's alleged discriminatory hiring actions in 2005. Similarly, the payroll and personnel information regarding all employees is also relevant to whether the respondent engaged in a pattern of discriminatory hiring. As the NLRB points out, the respondent did not fill all advertised positions which may be explained by legitimate business decisions such as reduced demand or having existing employees perform the advertised tasks—conclusions which may be supported by the information sought—or because of discriminatory animus. On the other hand, I do not find that the information related to the value of the respondent's jobs is relevant to the NLRB's investigation into possible discrimination when hiring employees.

The respondent is only required to produce the following information in response to Requests 5–7 of Subpoena Duces Tecum B–501437:

5. A list of all jobs performed by Champagne Drywall from January 1, 2005 to presented, showing their duration, and their staffing, including numbers and classifications of employees.

6. A list of all jobs that Champagne Drywall is scheduled to perform between now and March 2006, showing their anticipated duration and their anticipated staffing, including numbers and classifications of employees.

7. A list of all jobs for which Champagne Drywall has used subcontractors to perform drywall installation/finishing work since January 1, 2005, indicating the duration of the job, and the number of employees used by the subcontractor.

All other document requests in both Subpoena Duces Tecum B–501437 and Subpoena Duces Tecum B–501454 must be complied with fully in accordance with the terms of the subpoena.

It is SO ORDERED.