DECISION
Before this Court is the appeal of Elaine Atturio, Charles Atturio, and Colony Personnel Associates, Inc. ("Colony") from a final order of the Rhode Island Commission for Human Rights ("RICHR"), granting in part and denying in part a motion to quash a subpoena duces tecum. This Court has jurisdiction pursuant to G.L. 1956 § 42-35-15.
 FACTS AND TRAVEL
This case arises out of a charge of discrimination issued by the RICHR against Mr. and Mrs. Atturio and Colony (collectively, "Plaintiffs"), alleging that Plaintiffs refused to refer employees for work who were disabled or of minority status but otherwise qualified to fill the job openings. Colony is an employment agency in the business of referring applicants for employment with its clients. Mrs. Atturio is the President and one of two directors for Colony. Mr. Atturio is the Vice President and the second of the two directors for Colony. The charge of discrimination was issued against Plaintiffs after RICHR sent two testers to Colony: one disabled tester and one non-disabled tester. Allegedly, only the non-disabled tester was referred for *Page 2 
employment.[1] The charge alleged that Plaintiffs instructed its employees to screen applicants and mark their files as "DNU," meaning "DO NOT USE" if the applicants were disabled and/or appeared "ethnic" in their physical appearance, accent, or lack of command of the English language.
RICHR issued a subpoena duces tecum to Mrs. Atturio, which was duly served. The subpoena ordered production of the following records:
 (1) Files of all persons who applied for employment with Colony Associates, Inc. for the five years preceding June 29, 2007;
 (2) Workforce profile for all in-house employees, listing the age, race, ethnicity and disability (if any) for the five years preceding June 29, 2007;
 (3) A copy of W-2s provided to the IRS for the last five years, with Social Security Numbers redacted;
 (4) A copy of all information provided to the Workers' Compensation Bureau for five years preceding June 29, 2007;
 (5) A copy of all information provided to insurance company that provides Workers' Compensation Insurance for five years preceding June 29, 2007;
 (6) Copies of all written policies of [Plaintiffs] pertaining to operations and practices for five years preceding June 29, 2007;
 (7) Copies of all employee handbooks for five years preceding June 29, 2007.
Plaintiffs filed an objection and a motion to quash the subpoena with RICHR. RICHR held a hearing on the motion to quash on April 25, 2008. A written decision was issued by RICHR on the motion to quash on May 16, 2008, granting it in part and denying it in part. That decision amended the subpoena request ordering:
 (1) Records of all persons who applied for employment with Colony Personnel Associates, Inc. for the three years preceding June 29, 2007, including health care information provided directly by the applicants and employees, provided that:
 a. The respondents must provide all records of any kind, whether contained within or on a particular individual's file, on a separate document or in computer records that contain the words "Do not use", comparable words, or the initials "DNU"; *Page 3 
 b. The respondents may redact Social Security numbers;
 c. The respondents may redact personal information relating to persons other than the applicants, employees and respondents, such as relatives, beneficiaries and next-of-kin;
 d. The respondents may redact health care information provided to the respondents directly from a health care provider. If such information is redacted, the respondents must submit a log stating the identity of the employee or applicant, whether the respondents requested the information, the date of the request and the date the medical information was supplied.
 (2) EEO-1 Reports for 2004, 2005, 2006, and 2007;
 (3) A copy of the W-2s provided to the IRS for 2004, 2005, 2006 and 2007 with Social Security Numbers redacted;
 (4) A copy of that portion of the information provided to the Workers' Compensation Bureau of the state that provides the name of the respondents, the name and address of the addressee, the date, the identity of the author and/or person who signed the document and information relating to the number of employees for 2004, 2005, 2006 and 2007.
 (5) A copy of that portion of the information provided to the insurance company that provides Workers' Compensation Insurance for the respondents that provides the name of the respondents, the name and address of the addressee, the date, the identity of the author and/or person who signed the document and information relating to the number of employees for 2004, 2005, 2006, and 2007.
 (6) Copies of all written policies of the respondents pertaining to its operations and practices for the five years preceding June 29, 2007;
 (7) Copies of all employee handbooks for the five years preceding June 29, 2007.
On June 12, 2008, Plaintiffs appealed the RICHR's decision to this Superior Court. On appeal, Plaintiffs allege that the RICHR decision is in violation of constitutional or statutory provisions, in excess of the statutory authority of the RICHR, made upon unlawful procedure, and affected by other error of law. Both parties presented argument to this Court in a hearing held on February 13, 2009.
 STANDARD OF REVIEW
The Superior Court's judicial review of a final RICHR decision or order in a contested case is governed by the Administrative Procedures Act ("APA"), G.L. 1956 § 42-35-1 et seq. *Page 4 
Section 42-35-15(a) further provides that "[a]ny preliminary, procedural, or intermediate agency act or ruling is immediately reviewable in any case in which review of the final agency order would not provide an adequate remedy." In La Petite Auberge, Inc. v. RhodeIsland Commission for Human Rights, our Supreme Court noted that the APA "grants specific authority for judicial review of interlocutory as well as final orders." 419 A.2d 274, 279, n. 5 (R.I. 1980). This Court is mindful that the Superior Court should "sparingly exercise the power to review interlocutory rulings of administrative agencies in order to avoid inundation by preliminary issues that may ultimately be resolved or become moot in the course of litigation at the administrative level." Id This Court finds that review of the final agency decision will not provide an adequate remedy to the issue in this case, and that the issue will not become moot in the course of litigation. Accordingly, this Court will exercise its power to review the interlocutory ruling at issue in this case.
With respect to the substantive review of this case, § 42-3 5-15(g) of the APA provides as follows:
 The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions:
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
When reviewing a final decision or order, the court's review is limited to determining whether substantial evidence exists to support the decision. Newport Shipyard, Inc. v. Rhode Island *Page 5 Commission for Human Rights, 484 A.2d 893, 897 (R.I. 1984). Substantial evidence means "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance." Caswell v. GeorgeSherman Sand Gravel Co., 424 A.2d 646, 647 (R.I. 1981). This Court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. Interstate Navigation Co v. Div. ofPub. Utils. Carriers of R.I., 824 A.2d 1282, 1286 (R.I. 2003). If any substantial evidence exists, the court is required to uphold the agency's factual determination. Blue Cross and Blue Shield v.Caldarone, 520 A.2d 969, 972 (R.I. 1987). Agency decisions on questions of law, however, are not binding on this Court and may be reviewed to determine the law and its applicability to the facts. Narragansett WireCo. v. Norberg, 118 R.I. 596, 607, 376 A.2d 1, 6 (1977).
 ANALYSIS
RICHR is a statutorily created commission created by G.L. 1956 § 28-5-13. The duties of the RICHR include the duty "[t]o adopt, promulgate, amend, and rescind rules and regulations to effectuate the provisions of [the State Fair Employment Practices Act]," and the duty "[t]o receive, investigate, and pass upon charges of unlawful employment practices." Section 28-5-13(4) and (6). The RICHR has the power "in connection with the investigation or hearing, to require the production for examination of any books and papers relating to any matter under investigation or in question before the commission." Section 28-5-13(7)(i); see also Rhode Island Commission for Human Rights Rules and Regulations, Rule 15.[2] *Page 6 
Plaintiffs allege that notwithstanding the RICHR's authority to order a subpoena duces tecum, the RICHR's decision is in violation of statutory provisions G.L. 1956 § 5-37.3-1 et seq., the Confidentiality of Health Care Communications and Information Act ("Confidentiality Act"), and G.L. 1956 § 9-1-28.1, the Rhode Island statutory right to privacy. Plaintiffs further allege that the RICHR's decision is in excess of its statutory authority, made upon unlawful procedure, and affected by other error of law.
 I Confidential Health Care Information
Plaintiffs appeal the RICHR's decision alleging that the subpoena seeks the production of confidential healthcare information contained in the personnel files in violation of the Confidentiality Act, § 5-37.3-1
et seq. Plaintiffs claim that the Confidentiality Act precludes the disclosure of confidential information of individuals who are not parties to the present litigation without their consent. Defendant counters that that the Plaintiffs have failed to identify if the files sought for production contain any medical information at all. Further, Defendant contends that Plaintiffs' reliance on the Confidentiality Act is misplaced because our Supreme Court has ruled that once medical records have been supplied to a third person, any confidentiality is lost. Trembley v. City of Central Falls, 480 A2d 1359, 1363 (R.I. 1984).
Whether the Confidentiality Act prevents Plaintiffs from producing the documents sought in the subpoena is a question of law, and as such, the RICHR's decision on this issue is not binding on this Court. SeeNarragansett Wire Co., 118 R.I. at 607, 376 A.2d at 6. Accordingly, this Court may review the RICHR decision to determine the law and the applicability of the law *Page 7 
to the facts. Id At the outset, this Court questions whether there is any confidential health care information contained in the personnel files sought. At the hearing before this Court, the RICHR noted that neither tester sent to Colony was asked to provide any confidential medical information even though one tester presented himself or herself as disabled.
The purpose of the Confidentiality Act "is to establish safeguards for maintaining the integrity of confidential health care information that relates to an individual." Section 5-37.3-2. Confidential health care information is defined by the Act as "all information relating to a patient's health care history, diagnosis, condition, treatment, or evaluation obtained from a health care provider who has treated the patient." Section 5-37.3-3(3). In Trembley, our Supreme Court interpreted the definition of "confidential health care information" within the meaning of the Confidentiality Act. The Court found that the Confidentiality Act is "aimed at prohibiting third-parties from engaging in the solicitation and procurement of confidential health care information from health care providers without a patient's consent."Trembley, 480 A.2d at 1363 (emphasis added). Accordingly, our Supreme Court held that "[confidential health care information . . . does not include a medical report that a patient directly procures from his own physician and personally delivers to a third-party employer."Id.
Plaintiffs argue that the holding in Trembley does not apply here because the employees in that case were parties to the litigation, whereas the employees in this case, whose medical information is sought, are not parties to the present litigation. This Court will not construe a statute "to reach an absurd result." Iselin v. Retirement Bd. ofEmployees' Retirement System of Rhode Island, 943 A.2d 1045, 1049 (R.I. 2008). The holding in Trembley and the language of the statute make clear that the Confidentiality Act does not apply when an individual supplies health care information directly to an employer or potential employer. In the event that the *Page 8 
records sought by the RICHR's subpoena include medical information received directly from a health care provider, the subpoena is quashed.
 II Right to Privacy
Plaintiffs next contend that releasing the personnel records sought by the subpoena violates the right to privacy of those individuals and subjects Plaintiffs to liability if the files sought are produced. RICHR counters by questioning the standing of the Plaintiffs to raise this right on behalf of others. RICHR further argues that the commission investigatory file is not open to the public, and therefore, no private facts will be disclosed, nor will any offensive or objectionable facts be made public.
Whether the subpoena violates § 9-1-28.1, the statutory right to privacy, is a question of law. Section 9-1-28.1 provides a statutory right to privacy in the following circumstances:
 (1) The right to be secure from unreasonable intrusion upon one's physical solitude or seclusion;
 (2) The right to be secure from an appropriation of one's name or likeness;
 (3) The right to be secure from unreasonable publicity given to one's private life;
 (4) The right to be secure from publicity that reasonably places another in false light before the public.
Neither the right to be secure from an appropriation of one's name or likeness, nor the right to be secure from publicity that reasonably places another in false light before the public is implicated in this case. Therefore, this Court need only discuss the right to be secure from unreasonable intrusion upon one's physical solitude or seclusion, and the right to be secure from unreasonably publicity given to one's private life.
Liability exists for an unreasonable intrusion upon one's physical solitude or seclusion when there is an "invasion of something that is entitled to be private or would be expected to be *Page 9 
private," and the invasion is "offensive or objectionable to a reasonable man." Section 9-1-28. l(a)(l)(A)(i)(ii). Additionally, a cause of action for intrusion requires that the information be obtained through "wrongful or improper means." Pontbriand, 699 A.2d at 863. (no liability for intrusion upon one's physical solitude or seclusion when banking information possessed by governor was released to media because information not acquired through wrongful or improper means).
In this case, the RICHR is authorized to issue a subpoena in an employment discrimination investigation pursuant to § 28-5-13(7)(i) and Rule 15 of the RICHR Rules and Regulations. The acquisition of Colony's personnel files pursuant to a legally authorized subpoena cannot be considered wrongful or improper means. Thus, Plaintiffs could not be liable for an intrusion upon the physical solitude or seclusion of their current and former employees.
Liability exists under § 9-1-28.1(a)(3) for unreasonable publicity given to one's private life. Section 9-1-28.1(a)(3) does not create liability for any publicity given to one's private life, rather, liability arises when the publicity is unreasonable. To succeed on a claim under this section, a plaintiff must show (1) publication, (2) of a private fact, (3) that fact made public is one which would be offensive or objectionable to a reasonable person, and (4) damages. Section 9-1-28.l(a)(b). "Publication" has been interpreted to mean merely that the information be repeated to a third party.Pontbriand, 699 A.2d at 864. To establish that a particular fact was a "private fact," "plaintiffs must demonstrate that they actually expected a disclosed fact to remain private, and that society would recognize this expectation of privacy as reasonable and be willing to respect it."Id. at 865. Whether the fact made public would be offensive or objectionable to a reasonable person requires a determination of what would be offensive or objectionable in the context of the case.Id. *Page 10 
In this case, plaintiffs have not established that the facts made public would be offensive or objectionable. The records sought for production are investigatory records, and thus are not public.See G.L. 1956 § 38-2-2-(4)(P) ("Investigatory records of public bodies, with the exception of law enforcement agencies, pertaining to possible violations of statute, rule, or regulations . . . shall not be deemed to be public"). It has not been shown that the personnel files in this case are not reasonably objectionable or offensive to a reasonable person. The information obtained from these files is essential in determining whether or not Plaintiffs have engaged in unlawful employment discrimination. A reasonable person would not neccesarily find the disclosure of his or her personnel files in this type of investigation to be objectionable or offensive. Further, the publication of Colony's personnel files is not unreasonable because the information is necessary to the employment discrimination investigation. Furthermore, personal information not vital to the investigation, such as Social Security numbers, and information relating to persons other than the applicants or employees, and may be redacted pursuant to the RICHR's decision.
 III W-2s
With respect to discovery of W-2s and income tax returns, Plaintiffs claim that the RICHR decision requiring Plaintiffs to produce W-2s for the years 2004, 2005, 2006, and 2007 is not relevant to the determination of whether or not discrimination occurred. Plaintiffs rely on G.L. 1956 § 8-6-2 as recognizing a heightened level of privacy as related to the production of W-2 forms. Plaintiffs also claim that the RICHR has not made a clear showing of need to invade the privacy of Colony's past and current employees. *Page 11 
Our Supreme Court has held that the production of income tax returns could be ordered only upon a clear showing of the need to invade the privacy of the taxpayer. DeBiasio v. Gervais Electronics Corp.,459 A2d 941, 943 (R.I. 1983) (court held that plaintiff demonstrated clear showing of need to require defendant to produce income tax returns because plaintiffs bonuses were based on percentage of defendant's net profits). In addition to a clear showing of need, relevance and materiality must also be shown. Id at 943 n. 3 (citing Novogroski v.O'Brien, 106 R.I. 490, 261 A.2d 283 (1970) and McGraw-Edison Co. v.Fridenn, 100 R.I. 267, 214 A.2d 381 (1965)).
In this case, Plaintiffs argue that the Defendant has not presented a clear showing of the need to invade the privacy of individuals who are not parties to this matter. Defendant counters that these records are required to determine the number of employees the Plaintiffs employs.
The RICHR's decision provided that W-2s should be produced for four years (2004, 2005, 2006, and 2007) with Social Security Numbers redacted. The RICHR was persuaded that this information is necessary to determine who was actually hired to work for the Plaintiffs, and as such, the privacy of the employees is outweighed by the relevance of the information to the determination of whether discrimination occurred. This Court, however, finds that the RICHR's decision is, clearly, erroneous with respect to the W-2 forms because a clear showing of need to invade the privacy of individuals not parties to this case has not been established. RICHR seeks production of the W-2 forms to determine the number of employees Colony employed during the years in question and to cross-check the number of W-2 forms filed with the number of employees Colony employed during those years. Ordering the W-2 forms to be produced simply as a method of cross-checking the number of employees employed by Colony in a given year *Page 12 
does not meet the high standard of a "clear showing of need." SeeDeBiasio, 459 A.2d at 943.[3] That portion of the subpoena requesting production of the W-2 records is stricken.
 IV Production of Documents Overly and Unduly Burdensome
Plaintiffs also argue that producing the documents required by the RICHR's decision is overly and unduly burdensome because it requires them to produce fourteen file cabinets and producing these files would seriously disrupt the Plaintiffs' business. The RICHR decision recognized that our Supreme Court has stated that a subpoena should not be excessive, indefinite or in excess of the needs of the party.See Central Soya Co. Inc., v. Henderson, 99 R.I. 388, 396, 208 A.2d 110,115 (1965). The decision also relied on Super. R. Civ. P. 26(b)(1), which provides that a court may limit discovery "if the discovery is unduly burdensome or expensive" after considering several factors including the needs of the case, the amount in controversy, resources of the parties, and the importance of the issues at stake. Further, federal courts have held that a court will not excuse compliance with a subpoena duces tecum "simply upon the cry of `unduly burdensome.'" N.L.R.B. v.Champagne Drywall, Inc., 502 F.Supp.2d 179, 181 (D. Mass. 2007) (quotingE.E.O.C v. Maryland Cup Corp., 785 F.2d 471, 479 (4th Cir. 1986)). The employer "must show that compliance would unduly disrupt and seriously hinder normal operations of the business." Id. at 181-82 (quotingMaryland Cup, 785 F.2d at 479).
There is substantial evidence in the record upon which RICHR may have concluded that the documents to be produced fell within the permissible scope of discovery and did not impose an undue burden on Plaintiffs. SeeCentral Soya Co., Inc., 99 R.I. at 396, 208 A.2d at 115. The RICHR decision limited the scope of the original subpoena by limiting the years certain documents had to be produced. Additionally, RICHR offered to conduct on-site reviews of the *Page 13 
files "so as to make as minimal an impact upon the daily operation of the [Plaintiffs'] business." (Tr. at 6.) See Champagne Drywall502 F.Supp.2d at 181-82 and Maryland Cup, 785 F.2d at 479. Accordingly, the RICHR's finding that the revised subpoena duces tecum is not overly or unduly burdensome is supported by substantial evidence on the record.[4]
 CONCLUSION
This Court finds that neither the Confidentiality Act nor the statutory right to privacy is implicated in this case by requiring Plaintiffs to produce Colony's personnel files pursuant to the RICHR's subpoena. Additionally, this Court finds that Plaintiffs need only produce W-3 forms for the years 2004, 2005, 2006 and 2007 rather than W-2 forms. Finally, this Court upholds the RICHR's decision finding that the scope of the subpoena is not overly or unduly burdensome.
Counsel shall submit the appropriate order for entry.[5]
[1] Plaintiffs claim that RICHR has refused to disclose the identity of these testers.
[2] Similarly, the Courts allow a broad cope of discovery: The scope of permissible discovery is governed by Super. R. Civ. P. 26(b)(1), which provides:
 Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . . It is not ground for objection that information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
This rule makes clear that the information sought through discovery does not have to be admissible. The information need only be relevant to the subject matter and appear to be reasonably calculated to lead to admissible evidence. Robert Brydon Kent, Rhode Island Practice, § 34.3 (1969).
[3] Less obtrusive records could be used for the stated purpose, without showing specific wages or social security numbers for specific employees. W-3 forms could fulfill many of the goals of the RICHR.
[4] While the subpoena is not quashed in this regard, the Court encourages counsel to cooperate. Each of the parties appear to accept the proposition that an on-site limited sampling would be appropriate.
[5] The Court reserves to any employees or applicants their ability to seek further relief.